(No. 21076.—<span></span>

ALBERT DOBROTH *et al.* Appellees, *vs.* MINNIE JENSEN
*et al.* Appellants.

*Opinion filed April 23, 1932.*

PRITZKER & PRITZKER, for appellants.

CUMMINGS & WYMAN, (AUSTIN L. WYMAN, of counsel,) for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

On December 30, 1930, the mother, two brothers and a sister of Otto Dobroth, deceased, filed a bill in the superior court of Cook county against Minnie Jensen and Jess P. Jensen, husband and wife, to partition fourteen pieces of real estate in Chicago alleged in the bill to belong to Dobroth at the time of his death. The title to four of these pieces of real estate the bill alleged was in Jensen in trust for Dobroth. Jensen and wife filed answers to the bill, in which they denied that Jensen held the title to four of the pieces of real estate in trust for Dobroth and alleged that

all four pieces of real estate belonged to Jensen. They filed cross-bills, in which they set up the facts substantially as alleged in their answers and asked for affirmative relief. Upon issue being joined, the cause was referred to a master to take the evidence and report his conclusions of law and fact. The master found that Jensen was not the owner of the four pieces of real estate claimed by him and that the cross-bills should be dismissed and a decree of partition entered for all of the real estate. Exceptions to the report were overruled, a decree was entered as recommended, and Minnie and Jess P. Jensen appealed.

No question is raised as to the title to ten of the pieces of real estate described in the bill. The only question is as to the title to the four pieces claimed by Jensen.

Otto Dobroth, a bachelor, died testate in Chicago on August 1, 1928, leaving his mother, Albertina Dobroth, two brothers, Albert and Reinhold, and two sisters, Emma Doyle and Minnie Jensen, the latter being the wife of Jess P. Jensen, both of whom are appellants in this case. The will of Dobroth was executed on June 6, 1928, and it left all of his property to his mother, sisters and brothers. Mrs. Jensen was appointed executrix under the will. She administered on the estate and received for her services a fee of $10,000, which was allowed by agreement of her brothers and sister. There is some evidence tending to show that this allowance was in settlement of any dispute between the parties as to the property in question. For about thirty years prior to his death Dobroth was engaged in the real estate business in Chicago. For the first few years he was a real estate broker, selling on commission. During the last years of his life he devoted his time almost exclusively to buying, selling and trading real estate on his own account. He did a large business, handling probably two hundred pieces of real estate of his own, which were apparently of considerable value, the evidence showing that the four pieces in question are worth from $40,000 to $80,000. In

handling his own real estate it was his habit about the time of the World War to place the titles in various parties, including his mother, his brothers, brother-in-law, and other parties who were of no relation to him. No titles were so placed after 1918. His object in so doing was to collect commissions on the sales of his own real estate, to prevent people from knowing what interest he had in certain real estate, and to protect himself as an alien during the war. On many occasions he placed titles in Jensen. At such times the title was held by Jensen until Dobroth was ready to dispose of it, when Jensen executed a deed to anybody designated by Dobroth. There is no question but what Jensen had no interest in any of these pieces of property conveyed to him prior to 1918 and that he held the title as an accommodation to Dobroth and in trust for his benefit. On April 29, 1918, Dobroth, for a stated consideration of $10, conveyed by warranty deed to Jensen eleven pieces of real estate in Chicago, including the four pieces in this case. Later Jensen conveyed seven of these pieces to various parties designated by Dobroth. The title to the other four pieces remained in Jensen until the death of Dobroth. It is conceded by Jensen that there was no gift to him of any of these four pieces at the time the conveyance was made, but it is insisted by him that the trust ceased when Dobroth later told him that these four pieces of property were his absolutely. After the death of Dobroth, in 1928, various conversations took place between his heirs relative to the ownership of this property. Appellees contended that the property belonged to Dobroth at the time of his death, and Jensen claimed title and refused to convey. During these disputes Albertina Dobroth, the mother of Otto, died on October 7, 1930, leaving a will giving all of her property to her sons and daughters in equal shares.

In support of the contention of appellants that the property belonged to them, Ralph C. Jensen, a son of appellants, testified that he made several trips to Europe with Otto Do-

broth; that on one of these trips, in 1927, Dobroth said he was going to make a will and give to the Jensens a preference because they had done the most for him; that at another time Dobroth asked Ralph to go on a trip around the world with him and said he would give him $5000 to accompany him; that Dobroth stated that there were certain properties in the name of Jensen which he desired to go to the Jensens; that in April, 1928, Ralph was working as a steam-fitter's apprentice on a building being built at Irving Park and Kedzie avenue, on one of the properties in question; that he told Dobroth that the plastering was not being done properly, and Dobroth told him to see that everything was done right, as the building would belong to him some day. Ralph testified that Dobroth repeatedly stated to him in 1928 that he wanted Jensen to retain the property which was already in his name.

Ida M. Ernst testified that in August, 1928, after the death of Dobroth, in the presence of Mr. and Mrs. Albert Dobroth, Albert stated that Dobroth said that the property in question was given by him to Jensen; that the property was in Jensen's name and it belonged to him and that he had given Jensen the property a good many years before. This testimony is denied by Albert Dobroth.

In October, 1930, Jensen, in the presence of his wife and several of his relatives, turned over to Elmer Dobroth, a nephew, a trunk containing documents and title papers of Otto Dobroth, saying that he had no interest in them and wished to be rid of them. In the trunk were about 5000 documents, consisting of abstracts, deeds, insurance policies, leases, title papers and various other instruments. It is denied by Jensen that he knowingly turned over any papers pertaining to the four pieces of real estate in question. Jensen testified that at the time the trunk was delivered he said nothing about the matter because he was instructed not to interfere with the estate, that he handled none of the papers, and that he was informed they were

of no value. He testified that he told the heirs that in order to keep peace in the family he would convey his interest in the real estate in question for $10,000; that the attorney for the estate told him on numerous occasions that the entire matter would be settled; that Jensen told this attorney that Dobroth had told him that he gave Jensen the property because Mrs. Jensen was entitled to more than the rest of the family; that Jensen had helped the rest of the family and he had never helped Jensen in any way; that he repeatedly told both Jensen and his wife to hold the property, and that it was theirs even if they had to fight ten years to keep it. An offer was then made of certain conversations between Jensen and Dobroth at the time the deed was executed and at the time the will was executed, but an objection to this testimony was sustained by the master on the ground that Jensen was not a competent witness, under the statute, as to these matters.

Minnie Jensen testified to a conversation with Otto Dobroth in 1927, in which he said he was glad she took care of the collection of his rents and mortgages during the time he was in Europe, and that at that time he brought two valises full of mortgages and various other valuable papers, which he left with her for safe keeping. He said he had never given her what he gave the rest of his brothers and sister and that she and Jess had done more for him than the others had. He stated that there were certain properties which had been in Jensen's name for a good many years; that when the title to a piece of property had been in Jensen's name for more than two years it was his and nobody could take it away from him; that in Florida, in January, 1928, he said he would give Mrs. Jensen a few pieces of real estate more than the rest because she had been nicer to him than the rest; that he was a single man and could dispose of his property the way he pleased; that in June, 1928, during his sickness, after he had made his will, Mrs. Jensen asked him about the property in the name

of her husband, and he said that this property was hers; that she should not let anybody take the property from her; that the title had been on record for more than two years and the property was hers, and that he was giving her a preference because she and her husband had been nice to him.

John Danko testified that in 1927 Otto Dobroth told him that he wanted to give shares in the property to the Jensens but did not say what property he intended to give them, and that in 1928 he said that Minnie Jensen was his pet sister and he would give her more of his property than he gave to the others.

In support of the contention of the appellees that Jensen was not the owner of this real estate, the evidence shows that neither before nor after the death of Otto Dobroth did Jensen have possession or attempt to take possession of the real estate, neither did he collect the rents nor attempt to collect them and did not pay any taxes. After the death of Dobroth, when four stores were erected on one of the properties, Jensen did not collect the rents from these stores. He claims that at the time of the death of Dobroth he did not know what property belonged to him. While it is possible that at the date of the death of Dobroth Jensen did not know what property was in his name, he had every opportunity to secure this information at all times. The deed to him from Dobroth, and any deeds which Dobroth may have executed conveying any part of the property to third parties, were on record and showed the facts, and the location of the property could be easily ascertained. The evidence conclusively shows that during the two years after the death of Dobroth, before the bill for partition was filed, Jensen did know these facts yet took no action in the matter. There was evidence that Jensen stated, when he was asked to convey the property to the heirs, that he had gone to no trouble to put the title in his name and he would go to no trouble to take it out of his name; that he had done a lot of work for Dobroth in holding the title and had

never received, anything for it; that he would have made a conveyance to the heirs long ago but some of them were too bull-headed to ask him for a conveyance, and that he had no interest in the property.

Minnie Jensen, as executrix of the estate of Dobroth, filed an inventory, in which she included the property in question as belonging to the estate and an inheritance tax was assessed against it. The evidence shows that she testified in the inheritance tax case that Dobroth had made no gifts or advancements in his lifetime nor any conveyance to take effect at or after his death, except that certain property was in the names of herself and her husband which they had conveyed back to the estate. After the death of Dobroth, Mrs. Jensen, as executrix, collected the rents, and after paying the necessary expenses she disbursed the balance to the heirs of Dobroth in the proportions specified in the will. She testified that during the period of administration she received an offer for a part of this property and discussed the price with her husband and her brothers and sister, and the only reason the property was not sold was because her brothers insisted that the price was not large enough. If her husband owned the property it is difficult to understand why she discussed this question with her brothers and sister and why their decision prevailed. She first testified that the reason the property was included in the inventory and why an inheritance tax was assessed against it was because these questions were left in the hands of her attorney and she did not understand them. She was asked if she had any objections to having her lawyer testify with reference to these matters. She answered that she would be glad to have him do so. Later, when it became apparent that various discrepancies in her testimony might be shown by the testimony of the attorney, she at the next hearing asked to correct her testimony, and she stated that she refused to waive the question of privilege and refused to let her attorney testify. The mas-

ter told her that she was not correcting her testimony but that she was attempting to repudiate a stipulation she had made. She then testified to several points on which she was in error in her testimony on the previous hearing. She admitted that the attorney explained to her and her husband the effect which the inventorying of this property and the assessment of an inheritance tax against it would have on any claim the husband attempted to make to the property and that it would lessen his chances of recovery. She testified that her husband was present on one or two occasions when her lawyer discussed these matters. Emma Doyle testified that in the presence of various members of her family Jensen stated that he wanted $10,000 before he would convey the title to any of these properties.

It is conceded by appellants that at the time the deed from Otto Dobroth to Jensen was executed conveying the land in question Jensen merely held the title as trustee for the benefit of Dobroth and that there was no gift at this time. The presumption is that this condition of the title continued unless the evidence shows that there was a change in such condition. It did continue at least until a very short time before the death of Dobroth. The burden of proof was upon the appellants to establish that after this deed was executed Dobroth gave the property to them. *Niland* v. *Kennedy,* 316 Ill. 253.

Section 2 of the Evidence act provides that a party to a civil action shall not be permitted to testify in his own behalf when the adverse party sues or defends as legatee or devisee of any deceased person. There are four exceptions to this section. The first one permits testimony as to the facts occurring after the death of the deceased person. The second applies where there is an agent. The third permits testimony of transactions brought out by the person suing or defending in a representative capacity; and the fourth permits a party not suing or defending in a representative capacity to testify concerning such admissions

or statements as have been brought out by a witness not a party to the proceeding and who testifies in behalf of the party suing or defending in a representative capacity. It is insisted that under this statute Jensen and his wife were not competent witnesses. The testimony of Jensen should have been limited to transactions which took place after the death of Dobroth. (*Sayles* v. *Christie,* 187 Ill. 420; *Leavitt* v. *Leavitt,* 179 id. 87.) The most of the testimony of Jensen is confined to matters which took place after the death of Dobroth, and therefore the most of his testimony was competent.

The record shows that counsel for appellees made an objection to the testimony of Minnie Jensen and at the end of her testimony moved to exclude all of it. The record shows that counsel subsequently withdrew this objection and the motion to strike her testimony, therefore appellees are in no position to complain that a part of her testimony was incompetent. It is apparent, however, that her testimony was considerably weakened by the fact that when she first testified she made certain statements with reference to her knowledge of the property held by Jensen, the inventory of that property and the assessment of an inheritance tax thereon, and later she repudiated this testimony and testified to the contrary.

This was a trial by the court without a jury. There may have been some incompetent evidence admitted, but when all of the competent evidence is considered it fails to establish the claim of appellants under their cross-bill that the property was given to them by Otto Dobroth during his lifetime.

The decree was in accordance with the law and the evidence, and it is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*