**People of the State of Illinois, Plaintiff-Appellee,
v. James Reece, Defendant-Appellant.**

**Gen. No. 53,505.**

First District, Third Division.

April 2, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and John McClory, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

Defendant, James Reece, was indicted for the crime of murder. After a bench trial, he was found guilty of involuntary manslaughter and sentenced for a term of two to ten years. On appeal, defendant contends that upon the evidence, a conviction for involuntary manslaughter was improper, and also that he was not proved guilty beyond a reasonable doubt.

On January 27, 1968, defendant and Ronald Watson, the deceased, were tenants living in separate upstairs rooms in a two-story house owned by Jessie Anderson and located at 418 East 45th Place, Chicago. At about 9:00 p. m., the landlord, who earlier had seen the two men arrive home together, heard a shot, went upstairs and asked defendant who was shooting. Defendant replied that he hadn't hurt deceased, that he had just "glanced him." Defendant told him not to call the police, but after seeing the deceased lying on the bed in his room, the landlord telephoned the mother of the deceased, who came to the house about five minutes later.

When the mother arrived the landlord directed her to Watson's room, but there was no answer when she knocked. She knocked again, and a girl answered and let her in the room. The girl didn't know where deceased was, so the mother started to look around, and found defendant in the closet pulling up his trousers. Defend-

ant told her that this was not her son's room, and that she should get out. She called the landlord, who verified that this was her son's room. The mother begged defendant to tell her where her son was; he stated that he didn't know. As defendant departed, the mother tried to stop him and threatened to call the police. Defendant told her to let him go or he would kill her. The police and mother found the deceased's body in defendant's room. The police did not find any weapons on the premises. According to the coroner's physician, deceased was intoxicated and had been killed by one bullet shot.

Earl Acup, an Illinois State Trooper, stopped defendant on the highway on the following morning for a traffic violation. Defendant told the officer that he was on his way to Springfield, Illinois, to give himself up for murder because he had shot a man. He stated that the man was coming at him with a knife, and he shot to scare him.

Defendant testified that on the evening in question deceased came in and said something about killing defendant. After complaining to the landlord, defendant left the house for awhile, returned and went upstairs. Deceased again came in and stated that he would kill defendant. Defendant asked him why, stating that he wanted to be his friend. Deceased started at him, and struck at defendant with a knife a few times, but missed him. Defendant also testified that they were about five feet apart when defendant took out his gun and showed it to deceased. When deceased jumped back, defendant testified "I guess I pulled the trigger on him." Defendant did not aim the gun, but it went off while he also was falling backwards. Defendant told the landlord to call the police, but he called deceased's mother instead. When she arrived, she started to quarrel with defendant, who closed the door so that she wouldn't see her son's body. Defendant departed in his automobile. He later

■

telephoned the Chicago Police and told them what happened, stating that he would surrender in Springfield because he did not wish to be beat up by the Chicago Police. He was subsequently stopped and arrested by an Illinois State Policeman.

■ Defendant first contends that upon the evidence, a conviction for involuntary manslaughter was improper. The Criminal Code, Ill Rev Stats 1967, c 38, § 9–3(a) provides as follows:

"A person who kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly."

It is undisputed that an element of this offense is the reckless commission of an act likely to cause death. People v. Bolden, 103 Ill App2d 377, 243 NE2d 687 (1968).

Under his first contention, defendant argues that self-defense presupposes the intentional use of force in defense of one's person. Consequently he maintains that a conviction for involuntary manslaughter, involving reckless conduct, cannot stand where defendant pleads self-defense, citing People v. Johnson, 54 Ill App2d 27, 203 NE2d 283 (1964). In that case, the court held that it was not error to refuse an instruction covering the elements of involuntary manslaughter in a case in which defendant maintained that he acted in self-defense.

■ In making this argument in the instant case, defendant overlooks the fact there was ample evidence to support the finding that in killing the deceased, defendant acted recklessly rather than in self-defense. Although defendant testified that he acted in self-defense when attacked by the deceased, he also testified that he drew the gun merely to scare deceased,

that he was not pointing the gun at deceased, but that he pulled the trigger as both men were falling back. Moreover defendant when arrested told the police officer that he had fired the gun to scare the deceased. It should also be noted that the police did not find a knife on deceased's person or on the premises. The trial court was entitled to consider all of the evidence, and was not compelled to believe defendant's testimony that he acted in self-defense. Clearly, there was sufficient evidence adduced to reveal reckless conduct on the part of defendant. We find that under the evidence, a conviction for involuntary manslaughter was proper.

Defendant next contends that he was not proved guilty of involuntary manslaughter beyond a reasonable doubt. Defendant concedes that the credibility of the witnesses is for the trier of fact to determine, but argues that the evidence presented by the State as a matter of law was not sufficient to overcome defendant's evidence of self-defense. We do not agree.

While the State's evidence was circumstantial, it was ample to prove defendant's guilt. The police found no knife, and defendant's argument that there were many people at the scene who may have removed the knife prior to the arrival of the police is not supported by the record. The trial judge was justified in finding that the deceased was unarmed. Defendant also acted in a manner not consistent with the conduct of a person who had been defending his person, in that he not only left the scene of the crime but also departed from the city. Nor was the trier of fact required to believe defendant's testimony that he left Chicago in order to surrender to the Springfield authorities rather than to the Chicago Police. Additionally, there was evidence adduced that defendant had moved deceased's body after the shooting. The landlord testified that he saw the body in deceased's room while it is undisputed that the police and deceased's mother found the body in defendant's

101

room. And finally as we have noted, defendant's own testimony as to the manner in which the shooting occurred, along with his out-of-court statement, supported a finding that his conduct was reckless. Based upon all the evidence, we find that defendant was proved guilty of involuntary manslaughter beyond a reasonable doubt.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.