THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD THOMAS, Defendant-Appellant.

(No. 11319;

Fourth District—August 27, 1971.

*Rehearing denied September 28, 1971.*

Lewis, Blickhan & Garrison, of Quincy, (Edward Tucker, of counsel,) for appellants.

Robert J. Bier, State's Attorney, of Quincy, (Matthew A. Hutmacker, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The defendant was indicted for aggravated battery and attempted murder. At a jury trial a verdict of acquittal was directed as to the charge of attempted murder. At the time of the instruction conference, the prosecutor requested and the court gave an instruction on the offense of reckless conduct. (I.P.I. Criminal 11.13—11.14.) The jury returned a verdict of guilty of the offense of reckless conduct. The defendant was sentenced to six months at the State Penal Farm and ordered to pay a $500.00 fine. This appeal follows.

It is the contention of the defendant that the evidence was insufficient to establish his guilt of reckless conduct beyond a reasonable doubt; that the trial court was in error when it gave the instructions upon reckless conduct as a lesser included offense and that other erroneous instructions were given. This appeal originally filed in the Supreme Court was transferred here.

In August, 1968, the defendant was living with his family in a rural area some 6½ miles from Quincy on a gravel road near Mill Creek Bridge. The defendant's household consisted of his wife and their four children. The defendant kept saddle horses for his use and rented pasture and

stable space for the use of others. On several occasions unknown persons had opened the gate of the corral where the horses were kept or pastured, allowing horses to escape. Because of these incidents of prowling, the defendant had engaged a private detective and apparently had notified the sheriff's office. One of the persons who had kept horses at the defendant's farm was a Christine Allensworth.

Christine Allensworth, her sister Charlotte Palmer, and her brother-in-law Tom Palmer, were together in Quincy, Illinois on the evening of August 13, 1968. Alcoholic liquor was being consumed. The three decided to go to the Thomas residence for purposes of collecting an indebtedness from Thomas to Christine Allensworth. Although there is some conflict in the evidence of the quantity of alcoholic liquors consumed, the evidence is rather clear that Thomas Palmer had had considerable to drink prior to leaving for the Thomas residence, en route thereto, and earlier at a tavern. These three persons arrived at the Thomas residence at around 10:30 P.M. A pole light was on in the driveway area.

The evidence is further that the Thomas's had gone to bed and were awakened when they heard the honking of an automobile horn, and heard the barking of dogs, and voices. When Mrs. Thomas awakened, her husband was already up. He inquired of her as to the location of a gun that he kept in the house. She answered the door while he was in the process of getting dressed and finding the gun. The evidence is that one of the three persons apparently called her name prior to the time that she opened the door. In any event, upon opening the door, she identified the callers by name and turned and informed her husband who was in another part of the house as to who was there. The husband came to the door, stood beside his wife in the doorway, and there followed a conversation between the defendant and Christine Allensworth and ultimately her brother-in-law Tom Palmer. The defendant had the gun—a .22 calibre revolver which he had purchased from a pawn shop in his hand. At a point in the conversation where defendant was explaining that he would pay the indebtedness to Allensworth, Palmer injected a comment, the defendant gestured toward Palmer with the gun, it discharged and Palmer was shot in the chest and was also hit in the area of his scalp.

There is a conflict in the evidence as to whether the gun was discharged once or twice, and there is likewise a conflict in the evidence as to the actions that would be necessary in order to discharge the gun two times in rapid succession. There is evidence in the record that the gun was defective and that under certain circumstances the bullet might not

be aligned with the barrel and that a firing under those conditions would result in a fragmentation resulting in two projectiles.

On the issue of failure to prove defendant's guilt beyond a reasonable doubt, we cannot say from our examination of this record that the proof is inadequate. While we need not detail the testimony of each of the witnesses, it is clear that there are shades and degrees of conflict in the versions of this incident: in the force necessary to fire the gun, and in the physical characteristics of the gun. In assessing the culpability of the defendant's conduct, an important issue is credibility of witnesses. It requires no citation of authority to establish that under such circumstances the trier of fact and not this court must resolve the issue. That has been done here and we cannot say that the evidence is insufficient.

The court instructed the jury that the charge of aggravated battery included the lesser offense of reckless conduct (I.P.I. (Criminal) 2.01 modified.) The court than gave an instruction defining reckless conduct and an issues instruction on reckless conduct. The defendant's contention is that reckless conduct is not a lesser included offense but is a separate statutorily defined offense. He contends that instructing the jury on reckless conduct without a prior indictment for that offense and without the opportunity for the preliminary procedures ordinarily invoked upon filing of a charge effectively denies him a reasonable opportunity to prepare for the defense of such charge and that such denial transcends the due process requirements to which he is entitled.

In *People v. Ostrand*, 35 Ill.2d 520, 221 N.E.2d 499, at page 505, the court observed: "* * * it is elementary that it is unnecessary to allege a lesser included offense in an indictment charging an offense of a higher degree when, in order to convict on the higher charge, the prosecution must prove every element necessary for a conviction on the lesser charge. People v. King, 34 Ill.2d 199, 215 N.E.2d 223; People v. Simmons, 26 Ill.2d 400, 186 N.E.2d 263; People v. Lewis, 375 Ill. 330, 31 N.E.2d 795; Prindiville v. People, 42 Ill. 217."

Thus there can be no valid objections on procedural grounds to instructions on a lesser included offense. The issue is not one of due process or reasonable opportunity to prepare because a lesser included offense by definition would be one of which the defendant had notice upon the filing of the greater charge. We hold that the offense of reckless conduct is a lesser included offense in this case.

The original charge of aggravated battery specified that the conduct of the defendant was that he knowingly and without legal justification while armed with a .22 calibre revolver shot Thomas Palmer and thereby

caused great bodily harm in violation of the cited section of the Criminal Code. The offense of reckless conduct as defined in the instruction relates to the same date, the same place, the same victim, the same weapon, and the same allegation of great bodily harm. The only discernible difference relates to the mental state, recklessness being involved in the reckless conduct; and the defendant's conduct having been "knowingly" with reference to the aggravated battery.

In *People v. Norris*, 118 App.2d 406, 254 N.E.2d 304, the court discussed the issue of whether a jury verdict finding a defendant guilty of aggravated battery and reckless conduct was fatally inconsistent and mutually exclusive. The court there observed that the intent element to support a verdict of aggravated battery is that the act be done intentionally and knowingly while the intent element to support reckless conduct requires only recklessness. Thus we conclude on the facts here that reckless conduct is included within the offense of aggravated battery and that the only element of difference relates to the degree of culpability and the lesser of these relates to reckless conduct. See *People v. Higgins*, Ill. Rev. Stat. 1969, ch. 38, par. 2—9, 86 Ill.App.2d 202, 229 N.E.2d 161.

Although the abstract is not complete as to all instructions, we have examined the instructions given and refused, and considering those instructions as a series, we conclude that there was no reversible error in the giving and refusing of instructions.

Finally, we turn to the issue of whether the defendant's conduct was such as to bring him within the definition of recklessness as found in section 4—6 of the Criminal Code, and section 4—3 of the Code with reference to mental state. (Ill. Rev. Stat. 1967, ch. 38, pars. 4—3, 4—6.) We conclude that the jury could determine under the facts and circumstances here that the defendant's conduct was such as could constitute a gross deviation from the standard of care which a reasonable person would exercise in the situation. Such conduct performed recklessly is performed with the requisite mental state contemplated by the definition of recklessness. The judgment of the circuit court of Adams County is affirmed.

Judgment affirmed.

SMITH, P. J. and TRAPP, J., concur.