THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS SMITH, Defendant-Appellant.

(No. 58541;

First District (5th Division)—December 14, 1973.

James J. Doherty, Public Defender, of Chicago (John T. Moran, Jr., Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Thomas A. Mauet, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DRUCKER delivered the opinion of the court:

Defendant was indicted for the murder of his wife, Bernadine Smith. After a bench trial, he was found guilty of voluntary manslaughter (Ill. Rev. Stat. 1969, ch. 38, par. 9—2)* and sentenced to three to 12 years.

On appeal defendant contends that he was not found guilty of voluntary manslaughter beyond a reasonable doubt, and that he did not receive effective assistance of counsel.

Jacqueline Perry, age nine, testified for the State as follows: On February 11, 1972, the date of the incident in question, she lived with her parents in apartment 5-E, 840 West Sunnyside, Chicago, Illinois. Her aunt, Bernadine Smith, lived in apartment 19-D of the same building. Around supper time Bernadine and her children were visiting Jacqueline's parents in their apartment when Jacqueline was given the key to Bernadine's apartment and told to get some corn. Jacqueline went to the apartment but got the wrong kind of corn and so returned to Bernadine's apartment to get some corn on the cob.

Jacqueline further testified that while she was in Bernadine's apartment she heard a knock and that her uncle, the defendant, was at the door. Defendant asked Jacqueline where his wife was and she told him Bernadine was downstairs at her house. Defendant then went into the front room, got a gun and loaded it with two bullets. The witness had seen the gun before when Bernadine had put it under her mattress. Defendant placed the gun in his right coat pocket and with Jacqueline took the elevator down to Jacqueline's apartment. When they arrived at Jacqueline's apartment, the defendant told his wife "come on" and the defendant, Bernadine and their children left the apartment. Jacqueline said something to her mother about seeing the defendant with the gun but her mother paid no attention to her.

Police Officer Gary Lapidus testified that he investigated the shooting at 840 West Sunnyside at about 7:30 P.M. on February 11, 1972, and at that time the defendant told him that he was cleaning his revolver with a handkerchief when he accidentally shot his wife. The witness further stated that he examined the gun and found two shells in the

---

* The statute in pertinent part states: "§ 9—2. VOLUNTARY MANSLAUGH-TER.) (a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:
    (1) The individual killed, or
    (2) Another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed.
Serious provocation is conduct sufficient to excite an intense passion in a reasonable person."

chamber; one was expended and one was live; and that one shot had been fired from the weapon.

Police Officer Thomas Skeely testified that he interviewed the defendant at the 20th District Police Station on February 11, 1972. Defendant told the witness that after arriving in his apartment he turned on the television for the children and sat down with them on the couch, after which he then went into his bedroom and took a gun from underneath the mattress and brought it back to the living room. Defendant sat on the couch, took out his handkerchief and started dusting the gun when the gun discharged and struck his wife. The witness asked defendant if he kept the gun loaded, and defendant answered he always kept two rounds in it.

Ernst Warner, of the Crime Laboratory, testified that defendant's gun was a .32 Colt new police caliber, "Colt detective special revolver." He stated that if the weapon is cocked, the trigger must be pushed to the rear if it is to be fired; that firing the weapon cocked there is a four pound trigger pull and that when the weapon is fired uncocked, there is a ten and one-half pound trigger pull.

Johnny Ray Williams, Bernardine's brother, testified that around Christmas 1971 he saw the defendant with a gun while he was in defendant's apartment and that defendant told Bernadine, "Bitch, I kill you." Defendant was holding the gun in his hand and was pointing it at Bernadine when the witness told defendant, "put the gun down, you know you got to get along."

Defendant did not present any evidence.

OPINION

Defendant argues that the judgment of the trial court must be reversed because the defendant was not found guilty of voluntary manslaughter beyond a reasonable doubt.

■■ The State admits that it "has scrutinized the record and has been unable to find any evidence from which an inference of provocation can be adduced." Therefore, in light of this court's holding in *People v. Thompson*, 11 Ill.App.3d 752, 297 N.E.2d 592, the State confesses error as to the defendant's conviction for voluntary manslaughter. We have examined the record and agree that there is no evidence to support a conviction for voluntary manslaughter. Therefore, the judgment appealed from must be reversed.

Although the State admits the judgment for voluntary manslaughter must be reversed, it argues that the evidence proved the defendant guilty of involuntary manslaughter beyond a reasonable doubt and, therefore, requests this court to exercise its broad discretion provided for in Illinois Supreme Court Rule 615(b) and enter an order finding

the defendant guilty of involuntary manslaughter. It contends that from the fact of Bernadine's death it can be inferred that defendant pointed a loaded gun at his wife, and in the presence of his four children, and that this action constituted a reckless act and a conscious disregard of a substantial and unjustified risk.

■■    Ill. Rev. Stat. 1972, ch. 38, par. 9—3, in pertinent part states:

"§ 9—3. INVOLUNTARY MANSLAUGHTER AND RECK-LESS HOMICIDE. (a) A person who kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly."

It is undisputed that an element of this offense is the reckless commission of an act likely to cause death. (*People v. Reece*, 123 Ill.App.2d 97, 100, 259 N.E.2d 619.) The mental state of recklessness is defined in Ill. Rev. Stat. 1961, ch. 38, par. 4—6, as:

"§ 4—6. RECKLESSNESS. A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. An act performed recklessly is performed wantonly, within the meaning of a statute using the latter term, unless the statute clearly requires another meaning."

In discussing the mental state of recklessness, the Committee Comments to Ill. Rev. Stat. 1961, ch. 38, par. 4—3, state:

"The definition of 'recklessness' in section 4—6 is similar to that of the Model Penal Code (§ 2.02 (2)(c), comment at 125—6 (Tent. Draft No. 4, 1955),) emphasizing the 'conscious disregard' of the offender described by the statutory provision defining the principal offense, *but requiring that such conduct be a 'gross deviation from proper standards of conduct'—an objective evaluation of the same type as, but of a different degree from, the evaluation required in ordinary negligence.*" (Emphasis supplied.)

Thus it is necessary for the State to show that the actions of defendant were grossly different from proper standards of conduct. This necessitates a comparison of the defendant's conduct and other possible conduct in the factual circumstances presented.

We have reviewed the record in the instant cause and find the evidence insufficient to justify a finding that defendant's conduct was reckless. The State's theory rests solely on an inference from the fact of the

shooting. The trial court in its findings stated: "But when you get actually down to the shooting there is nothing to establish just what happened." No eyewitnesses to the shooting were presented. While the State has introduced evidence which demonstrated that some of defendant's actions prior to the shooting may have been deliberate, there is nothing to show that defendant's actions were reckless or that defendant's actions were likely to cause death. Nor was it demonstrated that defendant's actions were different from proper standards of conduct.

■■ The sole evidence relating to the actual circumstances of the shooting comes from statements defendant made to the police officers. In these statements defendant asserts that while dusting his gun he accidentally shot his wife. We cannot exclusively infer from these statements, nor from the other evidence presented, that defendant pointed the gun at his wife. From this evidence it could just as easily be inferred that Bernadine moved in front of the gun at the moment the gun was discharged. While the trial court found against the defense of accident, we cannot say that when a person is dusting or handling a loaded gun in his own apartment, in the presence of others, and under the meager evidence here presented, that this is per se a reckless act. We therefore must hold that the evidence was insufficient to prove defendant guilty of involuntary manslaughter beyond a reasonable doubt.

When the trial court found defendant guilty of voluntary manslaughter, the finding stood as an acquittal of the murder charge. (*People v. Lewis*, 375 Ill. 330, 334, 31 N.E.2d 795.) Since defendant's conviction for voluntary manslaughter cannot stand, and the evidence does not warrant a finding of guilty of involuntary manslaughter, the judgment appealed from must be reversed. In light of this conclusion we need not consider defendant's other contention.

The judgment is reversed.

Reversed.

ENGLISH and LORENZ, JJ., concur.