THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES E. PERRY, Defendant-Appellant.

(No. 57738;

First District (3rd Division)—April 18, 1974.

Julius Lucius Echeles and Carolyn Jaffe, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Mariann Twist, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendant was convicted, after a jury trial, on two counts of aggravated battery upon Judith Dingillo; first, a battery causing great bodily harm; and second, a battery with a deadly weapon (Ill. Rev. Stat. 1969, ch. 38, par. 12—4). The court denied probation and sentenced defendant to a term of 18 months to 5 years. On appeal, defendant contends:

(1) the court erred in failing to instruct the jury as requested by defendant on the lesser included offense of reckless conduct;

(2) the court erred in excluding evidence of defendant's state of mind;

(3) the court erred in allowing testimony of a police officer on rebuttal as to the force required to fire the gun;

(4) the prosecutor's conduct amounted to reversible error;

(5) defendant was not proved guilty beyond a reasonable doubt; and

(6) the trial court erred in denying probation.

On June 24, 1971, the victim, Judith Dingillo, suffered injuries as a result of a gunshot wound inflicted by the defendant. The facts and circumstances surrounding this incident—which are not disputed on appeal—are as follows:

Earlier on the above date, Frank Melecio slapped defendant's younger brother in the presence of several youths. Upon defendant's return from work that evening, he was informed of the incident. He armed himself with a .22-caliber automatic pistol he had purchased from a friend a week or so earlier, then placed the gun in the waistband of his trousers and "went looking" for the person who hit his brother. About 10:30 that evening, defendant and three other youths approached the house where the victim and Frank Melecio were sitting on the porch. When he saw the defendant, Melecio ran to the sidewalk and threw a bottle toward him. The gun held by defendant discharged, hitting the girl in the chest.

Defendant fled around the corner and the gun again discharged, inflicting a wound in his right leg. He gave the gun to Michael Koons for safekeeping. Koons and the defendant ran away from the scene.

The facts surrounding the first discharge of the gun are greatly disputed. The victim, testifying for the State, said she did not see the bottle strike anyone. She further testified that she saw a man kneeling or crouching on the corner of Lyndale and Kimball Streets, with a gun in his hand. She identified the defendant as that person. She heard the bottle break a couple of seconds before she was shot in the chest.

Michael Koons, testifying for the State, stated that a group of youths accompanied defendant to Lyndale and Kimball. Four persons, including the defendant and Koons, turned the corner toward a building where Melecio was sitting on the porch. Defendant preceded the other three, and someone said, "I want to talk to you." Then the person came off the porch, picked up a bottle and threw it at the defendant. Koons saw the bottle being thrown and, with the others, turned and ran in the other direction as the bottle broke. He did not see defendant get struck with the bottle. He heard a gunshot. He saw no weapon in defendant's hands on the street or while defendant ran around the corner and caught up to him, running west on Lyndale. Koons then heard another gunshot, and he and the defendant kept going. About a half block later, defendant stopped, took his hand out of his pocket and said, "I just shot myself." Defendant took a gun from his waistband, handed it to Koons and asked him to take it home, which he did. Koons gave the gun to the police the next day. He further testified to a conversation he had with the defendant some 3 months after the shooting, when defendant told him "he took a shot and didn't know who he hit, or what." Defendant never told him the gun went off accidentally. On cross-examination, Koons testified concerning that conversation, saying that defendant never said he intentionally fired at anyone.

Defendant testified in his own behalf. When he arrived home from work at about 10:15 P.M., he was told that his brother had been beaten by a man. He went to his garage and took the gun; being left-handed, he placed the gun in the waistband on the right side of his pants. He knew it was loaded, but did not know that there was a shell in the chamber. He did not know if the gun was cocked, and did not cock it. He did not know how to operate the gun and had never fired it before. One of the boys told him that Frank Melecio and Judy were sitting on a porch, and several boys accompanied him to the address. They had not reached the porch when Frank jumped up and threw a bottle at them. Defendant testified that he put up his shoulder to shield himself from the bottle, and as he did, the gun came out of the waistband of his pants and went

off. He had the finger of his left hand "by, but not on the trigger." He did not kneel and take aim with the gun in his hand. He started to run because he saw the victim, Judy, and Frank running toward him. He proceeded a short distance when the gun which he had put back in his waistband began to fall. He pulled it up and it went off again. He continued running until he realized he had shot himself. He then gave the gun to Koons and went home.

Harry Thieben testified for the defense that he informed defendant of the incident involving his brother Patrick's being hit by Melecio; that defendant told the witness and the other young men present that he wanted to go find out why Melecio had hit his brother. Four boys accompanied defendant to the vicinity of the victim's home when the witness saw Melecio jump off the porch and throw a bottle. The witness stated that the bottle first struck the defendant, then struck him. He ran toward the street when he heard a shot. He was also present when the defendant shot himself.

Officer Mudry, the arresting officer, testified for the State that the defendant when arrested made a statement that "after he had been struck with a bottle he pointed the gun towards the porch and the gun fired." The defendant told him the gun had accidentally discharged.

■■ Defendant's first contention is that the trial court erred in failing to instruct the jury as requested by him upon the lesser included offense of reckless conduct. During the conference on jury instructions, defendant tendered only Defendant's Instruction 1, defining negligence, and Defendant's Instruction 2, setting forth the issues on a charge of reckless conduct, both of which were refused. Although each contained the handwritten notation "non-I.P.I.", they were identical with IPI—Criminal 5.02 and 11.14 respectively. The instruction as to negligence had no basis in the evidence and was properly refused.

■■ Reckless conduct can be a lesser included offense of aggravated battery. (*People v. Thomas* (1971), 1 Ill.App.3d 139, 275 N.E.2d 253.) The elements of both offenses are substantially similar, with the only element of difference relating to the degree of culpability. To sustain a conviction for aggravated battery it must be proved that the conduct of the defendant was performed "knowingly" or "intentionally." On the other hand, to sustain a conviction for reckless conduct of the same facts, it must be proved that the defendant's conduct was "reckless" as defined in the Criminal Code. See Ill. Rev. Stat. 1971, ch. 38, pars. 12—4, 12—5.

■■ As this court stated in *People v. Bembroy* (1972), 4 Ill.App.3d 522, at 525, 281 N.E.2d 389,

> "It is well settled that where there is evidence in the record which, if believed by the jury, would reduce the crime to a lesser

included offense, an instruction defining the lesser offense should be given. (*People v. Jones* (1943), 384 Ill. 407; *People v. Papas* (1942), 381 Ill. 90; *People v. Harris* (1956), 8 Ill.2d 431.) This rule is applicable even though the theory of the defense at trial is inconsistent with the possibility that the defendant is guilty of the lesser offense. (*People v. Scalisi* (1926), 324 Ill. 131.) It is equally well settled, however, that the refusal to give an instruction defining the lesser included offense is not error where all the evidence adduced indicates that the jury would only be justified in returning a verdict of guilty or not guilty of the crime charged. (*People v. Price* (1939), 371 Ill. 137; *People v. DeRosa* (1942), 378 Ill. 557; *People v. Ruel* (1970), 120 Ill.App.2d 374; *People v. Dewey* (1969), 42 Ill.2d 148.)"

Also see *People v. Peery* (1973), 11 Ill.App.3d 730, 297 N.E.2d 643.

Thus, the specific issue for our determination is whether there is evidence in the record upon which the jury could have conceivably based a verdict of guilty of the lesser included offense of reckless conduct. We have heretofore held that a gun is a deadly weapon capable of killing another, and that handling a gun improperly may be reckless conduct. (*People v. Thomas* (1971), 1 Ill.App.3d 139, 275 N.E.2d 253; *People v. Reece* (1970), 123 Ill.App.2d 97, 259 N.E.2d 619; and *People v. Mitchell* (1973), 9 Ill.App.3d 1015, 293 N.E.2d 683.) In *People v. Bembroy* (1972), 4 Ill.App.3d 522, at 526, 281 N.E.2d 389, we noted that "it has been specifically held that pointing a loaded pistol at another is such a gross deviation from the standard care which a reasonable person would exercise that it constitutes recklessness." See also *People v. Thomas, supra;* and *People v. Rodgers* (1971), 2 Ill.App.3d 507, 276 N.E.2d 504.

In the instant case, even though the evidence was conflicting, the defendant's trial testimony, if believed by the jury, was sufficient to create an issue of fact as to whether he acted "knowingly" or "intentionally" or "recklessly."

■■ We conclude that the jury could have determined from the evidence in the record that the defendant's conduct was such as could constitute a gross deviation from the standard of care which a reasonable person would exercise in the situation. Such conduct is performed with the requisite mental state contemplated by the definition of recklessness. In a jury trial it is the province of the jury, and not the judge, to determine the guilt or innocence of the accused, and also to determine whether the accused is guilty of aggravated battery or the lesser crime of reckless conduct "if there is any evidence which tends to prove the lesser rather than the greater crime." (*People v. Peery, supra,* 734.) The

trial court erred in the instant case in refusing the tendered instruction of the lesser included offense of reckless conduct.

Since it is necessary to reverse and to remand this cause for a new trial, we will confine our further consideration to those matters which may arise on retrial.

·· Defendant's second contention is that he was denied a fair trial by the court's precluding him from testifying as to his state of mind. He argues that the trial court improperly sustained the prosecutor's objections to certain questions asked of defendant by his counsel. Defendant attempted to testify that his brother was an epileptic. The court sustained the State's objection and admonished the jury to disregard the statement. Defense counsel asked defendant why he armed himself with the gun after hearing that his brother had been beaten. The court sustained the State's objection. Later, in the direct testimony of defendant, counsel asked him why he originally purchased the gun. The State's objection was again sustained.

■■ As to defendant's statement that his brother was an epileptic, that fact does not tend to prove or disprove any material fact in the case against defendant. The intent element to support a verdict of aggravated battery is that the act be done intentionally and knowingly. (*People v. Norris* (1969), 118 Ill.App.2d 406, 254 N.E.2d 304.) The only mental state required is that the accused knowingly and intentionally cause the social harm defined in the statute, *no premeditation or malice being necessary.* (*People v. Allen* (1969), 117 Ill.App.2d 20, 27, 254 N.E.2d 103.) Similarly, the reason why defendant purchased the gun more than a week prior to the shooting of Judith Dingillo is not relevant to any material issue in the instant case. Defendant is not being tried for the offense of unlawful possession of a firearm or any offense other than aggravated battery. Furthermore, the purchase of the gun was not "closely connected" in time to the alleged commission of the offense charged. (See *People v. Sessions* (1968), 95 Ill.App.2d 17, 238 N.E.2d 94.) The trial court did not err in excluding the foregoing testimony.

■■ However, defendant sought to explain why he armed himself immediately prior to his search for Frank Melecio and the shooting. He argues that he wished to explain his reasons for having taken the gun with him on the night of the offense. No offer of proof as to the reasons has been set forth, but the defendant contends that he did not intend to fire the gun. Where the intention or motive of the accused is in issue, he has the right to testify as to his intentions or motives and to have the circumstances surrounding the act considered in connection with his testimony. (*People v. Biella* (1940), 374 Ill. 87, 28 N.E.2d 111; *People*

*v. Johnson* (1969), 108 Ill.App.2d 150, 247 N.E.2d 10.) The trial court erred in denying defendant an opportunity to testify as to his reasons.

■■ Defendant's third contention is that the trial court erred in allowing the police officer to testify as to the amount of pressure required on the trigger to discharge the gun. At the trial, Officer Mudry testified that the trigger pull was 4 pounds. Defense counsel objected to the question on the ground that the State had failed to qualify the witness as a ballistics or gun expert. The objection was overruled and defense counsel withdrew the objection. Such withdrawal waived defendant's right to complain. (*Dobroth v. Jensen* (1932), 348 Ill. 157, 165, 180 N.E. 785.) However, since this question may again arise on a retrial, we will review the admissibility of such evidence. The witness testified that he knew, of his own personal knowledge, that 4 pounds of pressure on the trigger was required to discharge the weapon. The trial court held that expert testimony is not required to explain the pressure necessary to effect a discharge. The weapon was in court. The witness stated only that he was familiar with this *particular type* of weapon. No evidence was introduced that the witness examined the particular gun or performed any tests on it. The witness was not qualified to testify as to the precise pressure required to discharge the particular gun, either as an expert or as a layman, without any factual or experimental foundation for such testimony.

For the foregoing reasons, defendant's conviction and sentence are reversed, and the cause remanded for a new trial not inconsistent with the views expressed herein.

Reversed and remanded.

McNAMARA, P. J., and DEMPSEY, J., concur.