THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES BEMBROY, Defendant-Appellant.

(No. 55506;

First District—March 7, 1972.

Gerald W. Getty, Public Defender, of Chicago, (James N. Gramenos, Assistant Public Defender, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Larry Boress, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant, Charles Bembroy, was indicted for the murder of his daughter, tried by a jury and convicted. He was sentenced to the Illinois State Penitentiary for a period of from 14 to 17 years. Defendant appeals contending that the trial court's refusal to submit involuntary manslaughter instructions to the jury was error requiring reversal.

The State's witnesses testified that on July 28, 1969, Carolyn Smith, the defendant's daughter, resided in Cleveland, Ohio. On that day, she traveled with three of her girl friends to Chicago to visit her family. They arrived by bus at about 1:00 A.M. on July 29, 1969. After drinking for a short time at the bus station, the girls were picked up by a brother of Virgie Paterson, one of the girls in the group. After dropping off one of the girls at her home, the remaining three were taken to the home of the

defendant. Arriving between 2:00 and 3:00 A.M., Carolyn telephoned Bembroy from a nearby drugstore and the girls secured entrance to the apartment.

The defendant welcomed his daughter and her two friends and offered them drinks and sandwiches. At about 3:00 or 3:30 A.M., Stanley Bembroy, the defendant's son, arrived at the apartment. Stanley joined in the conversation and drinking of alcoholic beverages with the others and then departed at about 5:00 A.M. At about 6:40 A.M., after a considerable number of drinks had been consumed, the group was seated in the living room and the conversation turned to sex. There was testimony that the defendant made several propositions of illicit sexual activity to his daughter and her girl friends. When he was refused, the defendant produced a gun from his pocket. He said, "I am going to kill all ————," and pointed it at one of the girls. He pulled the trigger, but the gun misfired. He pointed it at a second girl and the gun again misfired. Defendant then turned the gun toward his daughter and pulled the trigger. The gun fired, and the bullet penetrated her chest and heart, causing death. The police were immediately summoned and when they arrived they found the defendant standing over his daughter saying, "Oh, my God, I shot my daughter."

The defendant testified in his own behalf at trial. He stated that the gun, a .22 caliber Rohm automatic pistol, had been purchased by him for the protection of his home, but that it was defective when he bought it. He knew that the firing pin of the gun was defective and that sometimes it would fire when the trigger was pulled, and sometimes it would not. The shells that were in the gun on the night in question had been in the gun for some time. Each shell had been previously "snapped on" in the gun but had misfired.

Bembroy further testified that he had drank quite a bit earlier in the evening before he went to bed. Later, when his daughter and the girls arrived, he resumed drinking gin and whiskey with them. He admitted that he was under the influence of alcohol at the time of the shooting. The gun had been lying in the chair in which he had been sitting, and he had decided to put it in a trunk across the room. As he crossed the room carrying the gun in his left hand, he was talking to one of the girls and the gun accidentally discharged. He stated that he cried out for someone to call the police and then went to his daughter who was lying on the floor. Bembroy stated that he had not intended to kill his daughter.

The defense theory at trial was that the killing was accidental and therefore not murder. After presentation of all the evidence and final arguments to the jury, defense counsel submitted Illinois Pattern Jury

Instructions No; 7.07 and 7.08, defining and setting forth the elements of involuntary manslaughter. The trial court refused to give these instructions on the grounds that the evidence presented justified a verdict of guilty of murder or an acquittal, and that there was no evidence which would justify a conviction for involuntary manslaughter. Defendant contends that there was evidence to sustain such a verdict and that the failure to so instruct was therefore reversible error.

*Opinion*

■■ Involuntary manslaughter is a lesser offense included in the crime of murder. ( Ill. Rev. Stat. 1967, ch. 38, par. 9—1 *et seq.*) It is well settled that where there is evidence in the record which, if believed by the jury, would reduce the crime to a lesser included offense, an instruction defining the lesser offense should be given. (*People v. Jones* (1943), 384 Ill. 407; *People v. Papas* (1942), 381 Ill. 90; *People v. Harris* (1956), 8 Ill.2d 431.) This rule is applicable even though the theory of the defense at trial is inconsistent with the possibility that the defendant is guilty of the lesser offense. (*People v. Scalisi* (1926), 324 Ill. 131.) It is equally well settled, however, that the refusal to give an instruction defining the lesser included offense is not error where all the evidence adduced indicates that the jury would only be justified in returning a verdict of guilty or not guilty of the crime charged. (*People v. Price* (1939), 371 Ill. 137; *People v. DeRosa* (1942), 378 Ill. 557; *People v. Ruel* (1970), 120 Ill.App.3d 374; *People v. Dewey* (1969), 42 Ill.2d 148.) Thus, the specific issue presented for our review is whether there is evidence in the record upon which the jury could have conceivably based a verdict of guilty of involuntary manslaughter.

■■ A person commits involuntary manslaughter when he "kills an individual without lawful justification of his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly." (Ill. Rev, Stat., ch. 38, par. 9—3(a).) The elements of the offense may be distinguished from those of the offense of murder only in terms of the mental state required. While a conviction for murder (Ill. Rev. Stat., ch. 38, par. 9—1) requires an intent to kill or do great bodily harm, or knowledge that his acts will create a strong probability of such a result, a conviction for involuntary manslaughter requires only reckless conduct which causes death. Recklessness is defined in our Criminal Code (Ill. Rev. Stat., ch. 38, par. 4—6):

"4—6. RECKLESSNESS] A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross

deviation from the standard of care which a reasonable person would exercise in the situation."

Involuntary manslaughter, therefore, requires no felonious intent or malice, and can be committed completely unintentionally. The only mental state required is a conscious disregard of a substantial and unjustifiable risk. Thus, if this record contains evidence of acts by the defendant which, if believed by the jury, could reasonably be concluded to be reckless conduct within the above definition, and those acts caused the death of Carolyn Smith, then we must hold that the trial court erred in refusing the involuntary manslaughter instructions.

■■ Defendant admitted during trial that he had had quite a bit to drink during the evening and that he was under the influence of alcohol. He had left a loaded gun lying in a chair during the evening of drinking, and just prior to Carolyn's death, it was his intention to transfer the gun to a trunk across the room from where he was sitting. He carried it, while talking to another person at the same time, with his finger on the trigger. In doing so, the gun was pointed in the direction of his daughter and it discharged. In order to justify the trial court's decision, we would have to decide that this conduct could not be found by the jury to be reckless within the statutory definition. We cannot do so.

■■ We believe that a jury could have found that a reasonable man would not leave a loaded pistol lying in a chair during a party where alcohol is being consumed in quantity, even though such a pistol may be defective and *may* not fire when the trigger is pulled. Even the mere handling of such a weapon in a small apartment while under the influence of alcohol obviously creates an unreasonable and unjustifiable risk to those persons who happen to be present. And it has been specifically held that pointing a loaded pistol at another is such a gross deviation from the standard of care which a reasonable person would exercise that it constitutes recklessness. (*People v. Thomas* (1971), 1 Ill.App.3d 139, 275 N.E.2d 253; *People v. Rodgers* (1971), 2 Ill.App.3d 507, 276 N.E.2d 504.) In the case at bar, the same act was admittedly performed while the defendant was intoxicated and therefore subjected those present to even greater risk. In the absence of evidence of an intoxicated condition so severe as to negate the possibility of the required mental state, we must hold that the defendant's testimony of his conduct was such as would warrant an imputation of a conscious disregard of an unreasonable risk of death to the other persons present in the room. Thus, his testimony was evidence of recklessness which, if believed by the jury, could have sustained an involuntary manslaughter conviction. The trial court erred in refusing to give the tendered instructions.

■■ In his prayer for relief in this appeal, defendant requested, as an

alternative to reversal and remand for new trial, a reduction in the degree of the offense from murder to the included offense of involuntary manslaughter. Because of the error made in the trial court, this murder conviction cannot stand, but we also doubt the usefulness of a retrial on the charge. Therefore, we exercise the power granted this court under Supreme Court Rule 615(b) (3) (Ill. Rev. Stat. (1969) ch. 110A, par. 615(b) (3) ) and reduce the degree of the offense for which defendant was convicted from murder to involuntary manslaughter. See *People v. Kurtz* (1967), 37 Ill.2d 103; *People v. Borden* (1967), 84 Ill.App.2d 442; *People v. Taylor* (1972), 3 Ill.App.3d 313.

In view of the fact that the sentence imposed in the trial court exceeds the statutory maximum authorized for the offense of involuntary manslaughter, it is also necessary to reduce the sentence. We have examined the record, nothing the circumstances of the offense and matters in aggravation and mitigation, but have concluded that there is a paucity of information which would enable us to determine the appropriate sentence. Therefore, we remand the cause for a pre-sentence investigation, a hearing in aggravation and mitigation, and reduction of the sentence to conform with the statutory limits applicable to the reduced offense.

The judgment of the trial court is therefore modified to adjudge the defendant guilty of involuntary manslaughter and the cause is remanded for proceedings consistent with this opinion.

Judgment affirmed as modified and remanded with directions.

LEIGHTON and SCHWARTZ, JJ., concur.