THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD CRAMER, Defendant-Appellant.
Third District   No. 79-153

Opinion filed March 5, 1980.

Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal by the defendant, Richard Cramer, from a conviction by the circuit court of Peoria County of the offense of theft of property having a value in excess of $150. The indictment charging the defendant alleged that he knowingly exerted unauthorized control over a truck belonging to another, having a value in excess of $150, with the intent to permanently deprive the owner of its benefit and use. In this appeal the only issue raised by the defendant is whether the trial court erred by refusing to instruct the jury as to an offense related to a motor vehicle, which the defendant claims is a lesser-included offense of the offense charged.

The relevant portions of the statutes involved are these:

"A person commits theft when he knowingly:

(a) Obtains or exerts unauthorized control over property of the owner; or

* * *

(d) * * *

(1) Intends to deprive the owner permanently of the use or benefit of the property." (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(a), (d)(1).)

Theft is a Class 3 felony. Ill. Rev. Stat. 1977, ch. 38, par. 16—1(e)(3).

The Motor Vehicle Code of our State provides:

"It is a violation of this Chapter for:

(a) A person not entitled to the possession of a vehicle to receive, possess, conceal, sell or dispose of it, knowing it to have been stolen or converted." (Ill. Rev. Stat. 1977, ch. 95½, par. 4—103(a).)

An offense related to a motor vehicle is a Class 4 felony. Ill. Rev. Stat. 1977, ch. 95½, par. 4—108(b).

■■ ■ The Illinois Supreme Court has recently recited the appropriate standards for determining when one offense is to be considered an included offense of another.

> "An included offense is defined by statute as an offense which '(a) [i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged, or (b) [c]onsists of an attempt to commit the offense charged or an offense included therein.' (Ill. Rev. Stat. 1975, ch. 38, par. 2—9.) In order to be classified as a lesser included offense, 'all the elements of the lesser must be included within the greater.' *People v. King* (1966), 34 Ill. 2d 199, 200." (*People v. Smith* (1980), 78 Ill. 2d 298, 306.)

To prove an offense related to a motor vehicle, neither the element of intent to permanently deprive the owner of use or benefit of the property nor the element of the value of the vehicle need be established, but in all other respects, the elements of an offense related to a motor vehicle are contained in the offense of theft. (*People v. Johnson* (1978), 64 Ill. App. 3d 1018, 382 N.E.2d 85.) While the issue raised in *Johnson* is not the precise issue raised in the instant appeal, the analysis there is dispositive of the issue here. An offense related to a motor vehicle is a lesser-included offense of theft as defined in section 16—1(a)(1).

■■ The State's reliance on this court's decision in *People v. Beauchemin* (1979), 71 Ill. App. 3d 102, 389 N.E.2d 580, is misplaced. In *Beauchemin* it was stated that the offense of theft as defined in section 16—1(d) of the Criminal Code of 1961 is not a lesser-included offense of the theft offense in section 16—1(a). Section 16—1(d) of the Criminal Code of 1961 and section 4—103(b) of the Illinois Vehicle Code are not identical in that section 16—1(d) requires that the property be stolen by another while section 4—103(b) does not.

The State also argues that, as an included offense or otherwise, the defendant has presented no evidence which would support a verdict under section 4—103(a). However, when evidence of the commission of the greater offense has been admitted, evidence of the commission of the lesser offense is necessarily included. (See *People v. Delk* (1976), 36 Ill. App. 3d 1027, 345 N.E.2d 197.) And "where there is evidence in the record which, if believed by the jury, would reduce the crime to a lesser included offense, an instruction defining the lesser offense should be given." (*People v. Bembroy* (1972), 4 Ill. App. 3d 522, 525, 281 N.E.2d 389, 392.) Although this rule applies even though the theory of defense is inconsistent with a possibility of guilt of the lesser offense, no error occurs if a review of the evidence indicates that the only justifiable verdict would

be guilty or not guilty of the offense charged. *People v. Bembroy* (1972), 4 Ill. App. 3d 522, 281 N.E.2d 389.

At the trial, Carl Witt, a car dealer, testified that People's exhibit No. 1 was a photograph of a 1967 pickup truck he had earlier examined. Witt estimated that the truck's fair market retail value was $495.99.

T. R. Bonds testified that the truck portrayed in People's exhibit No. 1 was his, and on August 9, 1978, this truck was taken from in front of his home. No one had his permission or authorization to drive his truck, and the keys had not been left in the ignition. At the time of the incident there were $1,000 worth of yard and cleaning tools in the truck. In addition, there were sign boards on the back of the truck.

Victor Stenson, T. R. Bonds' nephew, saw a stranger drive his uncle's truck past a park where Stenson and his friends were sitting. This occurred around midnight in early August of 1978. The truck stopped at a flashing light on the corner. A Thunderbird with two occupants, one male and one female, stopped in front of the truck, and there appeared to be a conversation between the people in the Thunderbird and the person in his uncle's truck.

Stenson and his friend, Mike English, ran to the corner to get a better look at the truck. English yelled to the car to stop the truck, but both vehicles "took off." Stenson and English went to their cars. English followed the truck alone because Stenson dropped his keys. Fifteen minutes later, English returned and said he knew where the truck was located. After phoning the police, English and Stenson drove to the Purple Martin Station on Jefferson Street in the city of Peoria. When the police arrived they brought the defendant out of a building located on Jefferson Street.

Stenson testified that the individual he saw driving his uncle's truck was white with shoulder-length hair and wearing a light colored T-shirt. However, he was not sure whether the defendant was the person he saw driving his uncle's truck.

Detective Sylvester was the next witness to testify. On August 9 at 9:45 a.m. he interviewed defendant at the Peoria county jail. After being advised of his *Miranda* rights, the defendant denied any involvement in the theft of the truck. Later, Sylvester had a second conversation with the defendant. Diane Johnson, a secretary, was present. After informing defendant of his *Miranda* rights, Sylvester advised defendant that he had taken statements from Stenson and English. Defendant then stated he would be willing to tell the detective what happened.

According to Sylvester, the defendant indicated that on the night of August 8, while walking in the area of Lake Longbow, he became sick to his stomach. Feeling he could not walk any longer, he discovered a pickup truck with keys in the ignition. He drove the truck to Pinkerton

School Road. There he stopped the truck and removed signboards and other tools and equipment from the truck bed. He then drove to his sister's house and later to a friend's business on North Jefferson. Shortly thereafter he was arrested. The defendant stated he did not intend to keep the truck permanently, but intended to return it. During neither of these interviews did the defendant appear intoxicated. On August 10, 1978, Sylvester had a third interview with the defendant in which he indicated he had taken the license plates off the truck at his sister's house.

As a defense witness, Brenda Bolen, the defendant's sister, was called to testify. On August 9, 1978, the defendant was living with her and her husband in Peoria, but at approximately 7:30 a.m. that morning, after she and the defendant had an argument, he left on foot. She did not know where the defendant was the night before nor when he returned home.

James Smith testified that on August 9, 1978, defendant was with him at his father's residence from 8 a.m. until 3 p.m. repairing a truck. Smith never saw the defendant with a truck other than the one they were repairing, and had never seen the truck depicted in People's exhibit No. 1.

Later that evening, around midnight, Smith again was with the defendant at a place of business on Jefferson. Smith's mother and father were present. Smith did not see the defendant with a truck and did not hear defendant mention a truck. Thereafter the police arrived and arrested the defendant.

Taking the witness stand in his own behalf, the defendant denied stealing the truck. He explained that he told Sylvester he had taken the truck because Sylvester threatened him, telling the defendant he was going to throw him back in the "slammer." Sylvester, according to the defendant's testimony, would not allow the defendant to have an attorney until he made a statement. He also "cussed" at defendant. Defendant stated, however, that he had not told Sylvester that he had thrown the signboards or tools off the truck.

After the defendant testified, the jury was informed that the defendant in 1975 had pled guilty to a charge of burglary for knowingly entering a motor vehicle with the intent to commit theft. In addition, the State called Diane Johnson-Goings. She was present with Sylvester and the defendant on August 9, 1978. At that time the defendant stated he had been walking a long way and that his feet hurt. He spotted an automobile and decided to take it. She did not recall the defendant mentioning any tools.

■ From this evidence the jury could find the defendant guilty of theft or not guilty. In addition, the jury could find that the defendant took the truck but did not intend to permanently deprive the owner of its use or benefit, as the defendant's statement to detective Sylvester indicates. In that event the defendant could be found guilty of an offense related to a

motor vehicle, but not theft. As a result, the trial court erred by refusing the tendered instruction on the included offense.

Accordingly, the judgment of the circuit court of Peoria County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

STENGEL and STOUDER, JJ., concur.