THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHNNY BRYANT, Defendant-Appellant.

First District (3rd Division) No. 86—1919

Opinion filed January 20, 1988.

Steven Clark and Donna Finch, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Joan E. Disis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

After a bench trial in the circuit court of Cook County, defendant, Johnny Bryant, and his codefendant, Randall Williams, were convicted of possession of a stolen motor vehicle, a Class 2 felony. (Ill. Rev. Stat. 1985, ch. 95½, pars. 4—103(a)(1), (b).) The trial court sentenced Williams to two years' probation and defendant to 3½ years' imprisonment.

In view of our disposition of this appeal, we will not restate the facts of the case other than to note that this was defendant's first conviction for possession of a stolen motor vehicle and that there was no evidence at trial that defendant was involved in organized vehicle

theft as a profession. Moreover, as we find the first issue defendant raises to be dispositive, we need not address the remaining issues.

Defendant contends section 4—103(b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 4—103(b)), under which he was convicted, violates the Illinois Constitution's guarantees of due process and proportionate penalties (Ill. Const. 1970, art. I, §§2, 11). Defendant's argument follows. The legislative history of the recent amendments to the Illinois Motor Vehicle Code in Public Act 83—1473 (1984 Ill. Laws 3636-88), effective January 1, 1985, evidences that the evils the legislature intended to eliminate thereby were organized motor vehicle theft and "chop shop" operations. These amendments reflect a legislative determination that organized motor vehicle theft and trafficking in stolen motor vehicle parts are more serious offenses than a first-time conviction for possession of a stolen motor vehicle and that persons involved in those activities should be treated more severely than those who, although charged with possession of a stolen motor vehicle, are not involved in organized criminality.

His argument continues. Prior to these amendments, a first-time conviction for possession of a stolen motor vehicle had been classified a Class 4 and Class 3 felony, while subsequent convictions were classified as Class 3 and Class 2 felonies. (Compare Ill. Rev. Stat. 1981, ch. 95½, par. 4—103(b) with Ill. Rev. Stat. 1983, ch. 95½, par. 4—103(b).) The amendment in Public Act 83—1473 reclassifying any conviction for possession of a stolen motor vehicle as a Class 2 felony is not reasonably designed to achieve the legislative end intended. This is because it unconstitutionally inflicts a greater penalty, *i.e.*, that of a Class 2 felony, on an offense, *i.e.*, possession of a stolen motor vehicle, which is less serious than that sought to be eliminated, *i.e.*, organized motor vehicle theft, which is punishable as theft, a Class 3 felony if the value of the property stolen exceeds $300, under section 16—1(e)(3) of the Criminal Code of 1961. (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(e)(3).) Finally, the legislative goal of penalizing the professional car thief and "chop shop" operator was more effectively accomplished before the 1985 amendments because the statutory scheme of increasing the punishment for a second conviction was more reasonably designed to assure that the more severe sentence was imposed on a defendant most likely to be engaged in the possession of stolen motor vehicles as a business.

■ Initially, we must address whether, as the State contends, defendant waived the issue of the constitutionality of section 4—103(b) by failing to raise it in the trial court. On this issue, Illinois courts follow two divergent views. (Compare *People v. Luckey* (1969), 42 Ill. 2d

115, 245 N.E.2d 769, *cert. denied* (1970), 397 U.S. 942, 25 L. Ed. 2d 122, 90 S. Ct. 955 (issue of constitutionality of a statute is properly preserved for review only when raised in and passed upon by the trial court), with *People v. Wagner* (1982), 89 Ill. 2d 308, 433 N.E.2d 267 (conviction under an unconstitutional statute is void and can be attacked at any time without necessity to preserve error by post-trial motion).) As such, we deem it in the interests of justice to consider this issue despite defendant's failure to preserve it below.

Our resolution of this issue is guided by two cases in which our supreme court has considered similar challenges to penal statutes. In considering whether the Illinois Controlled Substances Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1100 *et seq.*) violated the due process clause of the Illinois Constitution (Ill. Const. 1970, art. I, §2), the court in *People v. Bradley* (1980), 79 Ill. 2d 410, 403 N.E.2d 1029, stated:

"It is the general rule that the legislature, under the State's police power, has wide discretion to prescribe penalties for defined offenses. [Citation.] The legislature's power to fix penalties is, however, subject to the constitutional proscription which prohibits the deprivation of liberty without due process of law. [Citations.]

'We have consistently stated that the standard of a proper exercise of the police power is whether the statute is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare.' [Citation.]

The test, thus, focuses on the purposes and objectives of the enactment in question." 79 Ill. 2d at 417.

In deciding the issue, the *Bradley* court first noted that the Act expressly set out its purposes and objectives. From that expression, the court concluded that "[c]learly, the legislature intended that those who traffic in and deliver drugs should be subject to more severe sentences than those who merely possess them." (79 Ill. 2d at 418.) The court concluded that because the Act imposed a greater penalty on possession than on delivery of a schedule IV controlled substance, the penalty for possession contravened the express intention of the legislature, was not reasonably designed to remedy the evil the legislature determined to be a greater threat to the public and therefore violated the State due process clause.

The purposes and objectives of the 1985 amendments to the Illinois Vehicle Code, including the amendment of section 4—103(b), on which we must focus under *Bradley*, are nowhere expressed in the Illinois Vehicle Code itself. However, they are found in the legislative

history, consisting of the transcribed House and Senate debates, of Public Act 83—1473. That history reveals, as clearly as the legislature's express statement of intent revealed the purposes and objectives of the Controlled Substances Act, that the purposes and objectives of Public Act 83—1473 were to remedy the evils of "organized vehicle theft" and "chop shops." (See, *e.g.*, 83d Ill. Gen Assem., House Proceedings, May 24, 1984, at 107; 83d Ill. Gen Assem., Senate Proceedings, June 25, 1984, at 29.) Moreover, that history also reveals, by implication, that in amending the Illinois Vehicle Code and specifically section 4—103(b) to remedy the evils posed by those activities, the legislature deemed them greater threats to the public than ordinary possession of a stolen motor vehicle. That being the case, we must determine whether amending section 4—103(b) to make all convictions, including first-time convictions, for possession of a stolen motor vehicle a Class 2 felony is reasonably designed to remedy the evil the legislature sought to remedy.

█ Guided by *Bradley*, we conclude that the legislative scheme of increasing the penalty imposed on all defendants convicted for the first time in their lives of possession of a stolen motor vehicle is not reasonably designed to attack the evils of organized vehicle theft and chop shops because it imposes a greater penalty on all such defendants than it does on those convicted of theft of a motor vehicle under the general theft statute, section 16—1 of the Criminal Code of 1961.

█ We recognize that is clearly the legislature's province, not ours, to decide whether evil exists and the means appropriate to prevent it. (*People v. Boucher* (1979), 75 Ill. App. 3d 322, 325, 394 N.E.2d 60.) However, we also recognize that we may interfere with its determination of the character and extent of a penalty for a criminal offense where there is a clear constitutional violation, *e.g.*, where the penalty prescribed by statute is so disproportionate to the offense that it shocks the moral sense of the community or is cruel or degrading. (75 Ill. App. 3d at 325.) Moreover, it has been held that the policy underlying article I, sections 2 and 11, of our State constitution would be violated if the penalty prescribed for an offense is not as great or greater than that prescribed for a less serious offense. (*People v. Wisslead* (1983), 94 Ill. 2d 190, 196, 446 N.E.2d 512.) Article 1, section 2, provides that "[n]o person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws"; section 11 thereof provides, *inter alia*, that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, §§2, 11.

*Bradley* found that the penalty imposed for possession was not reasonably designed to effectuate the legislature's express intent to punish drug traffickers more severely than the possessors of drugs because, while the legislature criminalized both types of conduct, it imposed a more severe penalty on possession than delivery. This case differs from *Bradley* in several ways. However, those differences do not make *Bradley* inapposite.

The first difference is that, while the legislature intended to eradicate the evils of organized vehicle theft and trafficking in stolen vehicle parts, it failed to explicitly state that it believed those activities to be more serious than mere theft of a vehicle or possession of a stolen vehicle. Secondly, it failed to specifically criminalize those activities. Thirdly, that failure led to the concomitant failure to impose any penalty on that specific conduct and thus a greater penalty than imposed on mere possession of a stolen motor vehicle.

Instead, the legislature created a statutory scheme which: (1) insofar as it punishes organized vehicle theft as a discrete and separate offense, does so less severely, *i.e.*, as a Class 3 felony if the vehicle stolen is worth at least $300, than mere possession; and (2) insofar as it punishes trafficking in stolen vehicle parts, does so through a conviction for possession of a stolen motor vehicle. As such, we must conclude that the amendment of section 4—103(b) is not reasonably designed to remedy the evils which, we believe, the legislature determined to be a greater threat to the public and, therefore, that it is violative of the due process clause of the Illinois Constitution. We must make clear, however, that we predicate this holding on the fact that the amended section 4—103(b) punishes mere possession more severely than section 16—1 punishes, as mere theft, organized vehicle theft. We do not believe, to the extent section 4—103(b) punishes, as possession of a stolen motor vehicle, trafficking in stolen vehicle parts equally to mere possession, that it is unconstitutional. As previously noted, the policy underlying the due process and proportionate penalties provisions of the Illinois Constitution are violated only where the penalty prescribed for an offense is not as great or greater than that prescribed for a less serious offense. *People v. Wisslead* (1983), 94 Ill. 2d 190, 196, 446 N.E.2d 512.

*Wisslead* provides an additional basis for the conclusion that section 4—103(b) is unconstitutional. *Wisslead* involved a constitutional challenge to the armed violence statute as applied to the unlawful restraint statute. The court first determined that the penalties imposed for the offense of armed violence based on unlawful restraint with a gun, a Class X felony, and the more serious offense of aggravated kidnapping, *i.e.*, kid-

napping with a gun, a Class 1 felony, were unconstitutionally disproportionate by comparing the underlying offenses of unlawful restraint and kidnapping. More importantly, the court reached the same conclusion by comparing the offenses of unlawful restraint and forcible detention, a Class 2 felony. The court concluded that the former was a lesser included offense of the latter. It noted that forcible detention was armed violence based on unlawful restraint with a gun with the added element of the holding of a hostage. It therefore concluded that the reduced penalty for forcible detention violated the constitutional assurances of due process and proportionate penalties because the penalty for forcible detention was less than that for armed violence based on unlawful restraint "though another element had been added to those of the lesser included offense." 94 Ill. 2d at 197.

 Similarly here, possession of a stolen motor vehicle is a lesser included offense of theft of a motor vehicle. All of the elements to prove the less serious charge of possession of a stolen motor vehicle are contained within the more serious offense of theft. (*People v. Cramer* (1980), 81 Ill. App. 3d 525, 527, 401 N.E.2d 644, *rev'd on other grounds* (1981), 85 Ill. 2d 92, 421 N.E.2d 189; *People v. Johnson* (1978), 64 Ill. App. 3d 1018, 1021-22, 382 N.E.2d 85.) A lesser included offense is one "established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." (Ill. Rev. Stat. 1985, ch. 38, par. 2—9(a); *People v. Wisslead* (1983), 94 Ill. 2d 190, 196-97, 446 N.E.2d 512.) To prove the more serious charge of theft, the additional elements of an intent to permanently deprive the owner of the property and the value of the property must be shown. (*Cramer*, 81 Ill. App. 3d 525, 401 N.E.2d 644; *Johnson*, 64 Ill. App. 3d 1018, 382 N.E.2d 85.) As such, under *Wisslead*, we must conclude that it is a violation of the guarantees of due process and proportionate penalties of the Illinois Constitution for the legislature to have created a statutory scheme that punishes the lesser included offense of possession of a stolen vehicle more severely than the greater, more serious, offense of theft of a motor vehicle.

The State contends the amendment to section 4—103(b) reveals a legislative determination to change the character of possession of a stolen vehicle from a lesser included offense of theft to a separate, more serious offense than theft. Citing the legislative history of Public Act 83—1473, the State argues that the change in section 4—103(b) shows the legislative determination that "auto theft is a greater problem than general theft and should be punished more severely." In so arguing, the State ignores the references in the legisla-

tive history of Public Act 83—1473 to "organized vehicle theft" and "chop shops." These references bely the State's emphasis on general "auto theft" and reveal the special type of vehicle theft activities which the legislature intended to remedy by that act. The State's argument that the new section 4—103(b) was intended to close "the loophole that allowed auto thieves with no prior convictions for possession of [a] stolen motor vehicle to be punished less severely even though they may very well have stolen several vehicles" is, at the very least, an unwarranted inference from the legislative history of Public Act 83—1473.

In support, the State cites *People v. Smith* (1987), 159 Ill. App. 3d 156, 512 N.E.2d 71, in which the defendant made essentially the same argument against the constitutionality of the amended section 4—103(b) that defendant here makes. The court rejected this challenge. The court relied on the legislature's having imposed a more severe penalty on possession of a stolen motor vehicle than on felony theft to conclude that Public Act 83—1473 demonstrated a legislative intent that possession of a stolen motor vehicle be considered a separate, more serious offense than felony theft, not a lesser included offense of it. The court concluded that "[t]he legislature could properly make such an evaluation." (159 Ill. App. 3d at 157.) We believe the *Smith* court's analysis begs the question rather than answers it. That is, the test of whether the legislature may constitutionally impose a greater penalty on one offense than it imposes on another is not the simple recognition that it had, in fact, done so. If it were, the supreme court would have decided *Bradley* and *Wisslead* differently. Rather, the test, under *Bradley*, is whether the offense on which the greater penalty is imposed is, according to the legislature's own expression of intent, a less serious offense than the other. And, under *Wisslead*, the test is whether the offense on which the greater penalty is imposed is a lesser included offense of another. Under the *Wisslead* test, we believe *Smith* was wrongly decided and thus decline to follow it.

We also find that *People v. Bales* (1985), 108 Ill. 2d 182, 483 N.E.2d 517, and *People v. Steppan* (1985), 105 Ill. 2d 310, 473 N.E.2d 300, do not control the case at bar. In *Steppan*, the trial court had ruled unconstitutional the burglary statute's imposition of a greater penalty on theft from a vehicle, a Class 2 felony, than the theft statute did on what the court considered to be the more serious offense of theft of the entire vehicle, a Class 3 felony. The supreme court reversed. In so doing, it relied largely on the expansion of the burglary law from crimes involving only unlawful entry into a dwelling house to unlawful entry into other specified enclosures, including motor ve-

hicles. The court reasoned that this expansion of the burglary law indicated the legislature's equating the seriousness of burglary of motor vehicles with burglary of dwelling houses. Moreover, because the theft statute "was enacted to cover an 'entire range of offenses against property,' " the court presumed that the legislature considered different factors in enacting a penalty provision for theft than for burglary. Finally, because the burglary and theft statutes had different goals and purposes, the court found the former reasonable. (105 Ill. 2d at 321.) It may be, in the instant situation, that the legislature also considered different factors in enacting section 4—103 and the theft statute. However, the fact remains that, unlike the situation in *Steppan*, here there is no explicit indication that the legislature equated the seriousness of the offense of possession of a stolen motor vehicle with the seriousness of organized auto theft and "chop shop" operations. To the contrary, the legislative history reveals the opposite conclusion. As such, *Steppan* is inapposite.

In *Bales*, the trial court had ruled unconstitutional the penalty for residential burglary when compared to the penalty for what it considered to be the more serious offenses of aggravated kidnapping, in some instances, and indecent liberties with a child. The supreme court reversed. It reasoned that, although actual infliction of bodily harm could properly be considered, as the trial court had, in determining the seriousness of an offense, it was not the only factor. The frequency of a crime and the high risk of bodily harm were, it stated, also factors in that determination. The court concluded that, considering its frequency and the high risk of bodily harm associated with it, residential burglary was not less serious than the offenses of aggravated kidnapping, in some instances, and indecent liberties with a child. (*Bales*, 108 Ill. 2d at 195-96.) The frequency of the evils of organized vehicle thefts and "chop shops" may have been a proper consideration of the legislature in amending section 4—103(b). However, the fact remains that the legislature devised a statutory scheme which, to the extent it subjects those defendants not engaged in those activities to a greater penalty than those that are, is not reasonably designed to remedy those evils. As such, *Bales* is inapposite.

For all of the foregoing reasons, the judgment of conviction entered by the circuit court of Cook County is vacated and the cause is remanded for further proceedings consistent with this opinion.

Vacated and remanded.

WHITE, P.J., and McNAMARA, J., concur.