THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAYMOND WASHINGTON, Defendant-Appellant.

Third District   No. 3—87—0375

Opinion filed September 2, 1988.—Rehearing denied November 3, 1988.

Stephen Omolecki, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Masters, State's Attorney, of Joliet (Gerald P. Ursini, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Defendant was charged with possession of a stolen vehicle (Ill. Rev. Stat. 1985, ch. 95½, par. 4—103(a)(1)). Defendant was tried *in absentia* by a jury and found guilty as charged. He was sentenced to a six-year term of imprisonment. In this appeal, defendant challenges his conviction on evidentiary and constitutional grounds.

Defendant contends that the trial court committed reversible error in sustaining the State's objection to evidence of entrapment. Defendant further contends that his conviction cannot stand because the statute underlying his conviction violates guarantees of due process and proportionate penalties of the Illinois Constitution (Ill. Const. 1970, art. I, §§2, 11).

For reasons that will become clear, we consider defendant's evidentiary challenge first. The evidence presented by the State established that defendant, together with codefendants Paul Fields and Steve Roberson, appeared at a police-operated undercover "chop shop" in Mokena, Illinois, on September 16, 1985, with a 1984 Oldsmobile Cutlass belonging to one David Ozouf. The vehicle had been stolen from a commuter train parking lot earlier in the day. Arrangements for sale of the car were made by Roberson, who had been a confidential source for the police, and Agent George Fitzgerald, who posed as a partner in the body shop front for the sting operation. The evidence established that defendant drove the vehicle into the shop and that he acknowledged to Fitzgerald that the vehicle had been stolen from a commuter parking lot. Fitzgerald paid Roberson $450. Then Roberson, Fields and defendant drove off in another vehicle.

At the conclusion of the State's case in chief, defense counsel sought to introduce evidence that defendant had been entrapped. The trial court sustained the prosecutrix' objection on the ground that the defense is not available to one who denies having committed the offense. Defense counsel then presented an offer of proof which constituted defendant's sole defense to the charge. In the offer, it was established that during his association with the police as a confidential source, Roberson had been led by Agent Jack Townsend to believe that Fitzgerald was a "dirty" confidential source who should be watched by Roberson and reported to Townsend if Fitzgerald did any-

thing illegal. On several occasions, however, Roberson had collaborated with Fitzgerald in transactions involving other stolen vehicles, cocaine and insurance fraud without reporting to Townsend. Ultimately, Roberson was cut loose from his association with the police because he was untrustworthy. On the occasion of the transaction in this case, Roberson did not sign for the $450 payment as required when money is paid to a confidential source working for the police. Fitzgerald further testified that defendant and Roberson had brought another stolen vehicle to the sting "chop shop" a few days earlier on September 12, 1985. At the close of the offer of proof, the trial court again refused to admit the testimony.

■ The defense of entrapment consists of "two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." (*Mathews v. United States* (1988), 485 U.S. 58, ____, 99 L. Ed. 2d 54, 61, 108 S. Ct. 883, 886.) The rule adhered to by the trial court in denying defendant's evidence of entrapment in this case is stated and analyzed in *People v. Pagliuca* (1983), 119 Ill. App. 3d 906, 914, 458 N.E.2d 908, 915: "[I]n order to raise the issue of entrapment a defendant must admit that there was a crime committed and that he committed it, but was entrapped into doing so. [Citation.] A failure to make such admission will preclude the defendant from claiming the jury should have been instructed regarding entrapment."

■ In *Pagliuca*, as here, codefendant Perez did not testify on his own behalf. Unlike Perez, defendant in this case did not attend his own trial. The trial court here ruled that the loss of a possible entrapment defense was a consequence of defendant's choice to be tried *in absentia*. The *Pagliuca* court, however, after analyzing various positions assumed by courts considering the availability of the entrapment defense and other defenses, held that "a defendant who does not take the stand or offer testimony inconsistent with his assertion of entrapment is entitled to raise a defense of entrapment if the record contains some evidence that an entrapment has occurred." (119 Ill. App. 3d at 916, 458 N.E.2d at 916.) The court found that the evidence failed to support defendant Perez' theory because the intent to commit the crime originated with Perez, not the State officer.

More recently, the Supreme Court rejected the Illinois rule relied on by the trial court in this case, holding "that even if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment." (*Mathews*, 485 U.S. at ____, 99 L. Ed. 2d at 60, 108 S. Ct. at 886.) Based on *Pagliuca* and

*Mathews*, we must conclude that the trial court erred in sustaining the State's objection to the admission of defendant's entrapment evidence as a matter of law.

Having reviewed the offer of proof in its entirety, we find, however, that the error was harmless. There was no evidence whatsoever of defendant's lack of a predisposition to commit a crime. To the contrary, there was testimony elicited during the prosecution's cross-examination of Agent Fitzgerald indicating that defendant had been involved in an auto theft only four days prior to the offense of which he stands convicted. Under the circumstances, no reasonable jury could have found in defendant's favor, and the trial court did not err in refusing to instruct the jury on the entrapment defense.

We turn next to defendant's constitutional challenge. In *People v. Bryant* (1988), 165 Ill. App. 3d 996, 520 N.E.2d 890, the Illinois Appellate Court exhaustively analyzed the statutory scheme of section 4—103 of the Illinois Vehicle Code (under which possession is a Class 2 felony) (Ill. Rev. Stat. 1985, ch. 95½, par. 4—103(b)) with reference to the general theft statute in section 16—1 of the Criminal Code of 1961 (under which theft of a vehicle worth more than $300 is a Class 3 felony) (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(e)(3)). The court discussed the legislative history of section 4—103(b) and the lawmakers' objective of remedying the evils of "organized vehicle theft" and "chop shops" by reclassifying any conviction under the section, including a first-time possession offense, as Class 2 felonies (Pub. Act 83—1473, eff. January 1, 1985). The court noted, however, that the legislature had failed to specifically criminalize or to impose greater penalties for vehicle theft and trafficking in stolen parts—the essence of the evil the legislature sought to eradicate. The court concluded "that the amendment of section 4—103(b) is not reasonably designed to remedy the evils which *** the legislature determined to be a greater threat to the public, and, therefore, that it is violative of the due process clause of the Illinois Constitution." (165 Ill. App. 3d at 1001, 520 N.E.2d at 893.) Defendant's conviction was vacated, accordingly, and the cause was remanded for further proceedings.

In *Bryant*, as here, defendant advanced his constitutional argument for the first time on review. The court there determined that it was not in the interests of justice to apply the waiver doctrine under the circumstances. We agree that the waiver doctrine should not preclude our consideration of the constitutional issue in this case as well, especially since the issue technically did not arise until sentencing and defendant's post-trial motion was filed prior to the sentencing hearing.

The disposition of a case in which a statute is found to violate the constitutional guarantee of proportionate penalties appears to be a matter of some debate within the Illinois judiciary. (Compare *People v. Bradley* (1980), 79 Ill. 2d 410, 403 N.E.2d 1029, and *People v. Wisslead* (1983), 94 Ill. 2d 190, 446 N.E.2d 512 (defendants who successfully challenged the charges in the trial court before trial were discharged on review), with *People v. Bryant* (defendant failed to preserve constitutional challenge in trial court, but success on appeal resulted in *vacatur* of conviction and remand). See also *People v. Boyer* (1974), 24 Ill. App. 3d 671, 321 N.E.2d 321, *rev'd on other grounds* (1976), 63 Ill. 2d 433, 349 N.E.2d 50 (conviction affirmed, sentence vacated and cause remanded).) In this case, defendant prays simply that his conviction be reversed.

In *People v. Bradley* (1980), 79 Ill. 2d 410, 403 N.E.2d 1029, the primary authority relied on by the *Bryant* court, the majority of the court affirmed the dismissal of charges of possession of schedule IV controlled substances brought under the challenged statute (Ill. Rev. Stat. 1977, ch. 56½, par. 1402(b)) on due process grounds, inasmuch as the penalty for delivery of such substances under section 401(e) (Ill. Rev. Stat. 1977, ch. 56½, par. 1401(e)) was less severe than mere possession under section 402(b). But, the court remanded for further proceedings those charges previously dismissed by the trial court for possession of schedule II and III substances, because the penalties prescribed for delivery were "either greater than or equal to the penalty imposed for possession of those substances." (79 Ill. 2d at 419, 403 N.E.2d at 1033.) In his dissent, Justice Ryan took issue with the discharge of any of the defendants charged under the defective statute. Justice Ryan observed that the invalid penalty provision could be severed, the possession offense for schedule IV substances could be salvaged, and "[t]here would *** be no due process violation involved in sentencing one convicted of possession of a schedule IV controlled substance under the penalty provision provided for the delivery of such a substance." 79 Ill. 2d at 424, 403 N.E.2d at 1034-35 (Ryan, J., dissenting), citing *People v. Sinclair* (1972), 387 Mich. 91, 194 N.W.2d 878; *State v. Roberts* (La. 1976), 340 So. 2d 263; *State v. Jenkins* (La. 1976), 340 So. 2d 157; and *People v. Boyer* (1974), 24 Ill. App. 3d 671, 321 N.E.2d 321.

■■ We find Justice Ryan's reasoning sound and particularly applicable to the situation presented in this appeal. Here, like *Bryant* and unlike the causes in *Bradley*, defendant did not take issue with the constitutionality of the statute until after he had been tried and found guilty of the offense. Because it was well within the purview of the

legislature to proscribe the conduct for which defendant stands convicted, and the penalty provision—which has been found invalid only as applied to convictions for mere possession—is readily severable from the statute without affecting the remaining portions, we choose to vacate defendant's sentence only. (See *Boyer*, 24 Ill. App. 3d 671, 321 N.E.2d 321.) Evidence admitted at trial established that the value of the vehicle in question exceeded $300. Accordingly, we reduce the degree of the offense to that of theft—in this case, a Class 3 felony—and remand this cause for resentencing.

For reasons stated, we affirm defendant's conviction. Defendant's sentence is vacated, and this cause is remanded to the circuit court of Will County for resentencing as a Class 3 felony.

Affirmed in part; reversed in part and remanded.

STOUDER, P.J., and WOMBACHER, J., concur.