THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SAMUEL DREW, Defendant-Appellant.

First District (1st Division)   No. 1—86—2088

Opinion filed June 29, 1990.

Randolph N. Stone, Public Defender, of Chicago (Richard E. Gade, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Sara Dillery Hynes, and Sari Slivnick, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MANNING delivered the opinion of the court:

The defendant, Samuel Drew, was indicted for the offenses of theft and possession of a stolen motor vehicle. Following a jury trial, he was acquitted on the theft charge; however, the jury was "deadlocked" on the possession charge. The trial court declared a mistrial, and subsequently, a jury was selected for the defendant's second trial. After the jury was sworn, the defendant moved to dismiss the jury on the basis that black prospective jurors were systematically excluded from serving on the jury because of their race. The defendant argued that the State used six peremptory challenges during *voir dire*. Three peremptory challenges were used to excuse the only black potential jurors, a fourth was used to exclude a black potential alternate juror and two were used against white potential jurors. The State argued that no systematic exclusion occurred and that only five peremptory challenges were used. Three were used to exclude black potential jurors and two were used to exclude white potential jurors. However, the record does reveal that one was used to excuse a black potential alternate. One black person was selected and sworn as an alternate juror. The trial court acknowledged that the only three black potential jurors presented for consideration were excused by the State. However, the court stated that it did not see any systematic exclusion based solely on race. Therefore, the defendant's motion to dismiss the jury was denied.

The cause proceeded to trial on the possession of a stolen motor vehicle charge. Regina Roy Curry, owner of the stolen motor vehicle, testified that in November of 1985, she reported to the police that her 1979 Oldsmobile Cutlass Supreme was missing. She further testified that she never gave anyone permission to move her car. Officer John Valenti testified that on January 18, 1986, he saw a brown 1979 Cutlass parked in an alley with a license plate attached which was registered to Samuel Drew for use on a Volkswagon. When Officer Valenti transmitted the vehicle number which appeared on the dashboard into his computer, he discovered that the vehicle was stolen. After placing the car under surveillance, on January 22, 1986, the officer saw the defendant enter the car. He stopped the defendant and placed him under arrest.

The State rested after it presented certified copies of Regina Roy's vehicle registration and license renewal issued for a 1979 Oldsmobile and a certified copy of the vehicle registration issued to Samuel Drew for a 1967 Volkswagon. Thereafter, the defendant was found guilty of possession of a stolen motor vehicle and sentenced to an extended term of 12 years' imprisonment due to his prior criminal convictions. In his post-trial motion the defendant renewed his objection to the systematic exclusion of blacks from the jury. The defendant now appeals his conviction, contending that his conviction for possession of a stolen motor vehicle should be reversed because the statute under which he was convicted is unconstitutional. The defendant further contends that his cause of action should be remanded to the trial court for a *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, hearing since the State used its peremptory challenges to exclude all blacks from the jury.

The defendant initially argues on appeal that his conviction for possession of a stolen motor vehicle should be reversed since the possession of a stolen motor vehicle statute, effective January 1, 1985, reclassifying all convictions under section 4—103(b) as Class 2 felonies, is unconstitutional inasmuch as it violates the constitutional guarantees of proportionate penalties and due process. See Ill. Rev. Stat. 1985, ch. 95½, par. 4—103(b).

■ We acknowledge that prior to the Illinois Supreme Court's recent decision in *People v. Bryant* (1989), 128 Ill. 2d 448, 539 N.E.2d 1221, there was a split among the appellate courts regarding the constitutionality of the possession of a stolen motor vehicle statute. (See *People v. Bryant* (1988), 165 Ill. App. 3d 996, 520 N.E.2d 890; *People v. Ambrose* (1988), 171 Ill. App. 3d 87, 525 N.E.2d 536; *People v. Smith* (1987), 159 Ill. App. 3d 156, 512 N.E.2d 71; *People v. Carlyle* (1987), 159 Ill. App. 3d 964, 513 N.E.2d 61.) However, in *Bryant* the supreme court succinctly disposed of this issue by concluding:

> "We believe that the legislature's decision to steadily increase the penalty for possession of a stolen motor vehicle was designed to distinguish possession of a stolen motor vehicle from theft in order to remedy the increasing frequency of the offense of possession of a stolen motor vehicle and its related activities. Therefore, we hold that section 4—103(b) of the Vehicle Code is reasonably designed to protect the public from the evils of the offense of possession of a stolen motor vehicle and its related activities. As such, section 4—103(b) of the Vehicle Code does not violate sections 2 and 11 of article I of the Illinois Constitution." *Bryant*, 128 Ill. 2d at 457.

The defendant finally argues that although one black person was sworn as an alternate juror, the State used six peremptory challenges to systematically exclude all of the black prospective jurors presented from serving on the jury, resulting in an all white jury. Therefore, defendant contends that this cause should be remanded to the trial court to conduct a hearing in accordance with the United States Supreme Court decision in *Batson* (476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712). The defendant maintains that this hearing would provide the State with an opportunity to rebut the defendant's *prima facie* showing of racial discrimination occurring during *voir dire*. The State argues that since the defendant did not object to its use of peremptory challenges until after the jury was sworn, he has waived his *Batson* issue since waiver occurs where the defendant has failed to raise a *Batson* issue until after the jury has been sworn. The State further argues that a black alternate was selected to serve on the jury, and the trial court correctly held that a systematic exclusion of black jurors was not shown by the defendant.

In *Batson* (476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723), the United States Supreme Court held "that a defendant may establish a *prima facie* case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." Prior to the court's decision in *Batson*, it was very difficult to establish a *prima facie* case of discrimination since the defendant was required to show that the State had engaged in a pattern of excluding blacks from juries because of race in a series of cases "over a period of time," in order to establish a *prima facie* case of discrimination. (See *Swain v. Alabama* (1965), 380 U.S. 202, 227, 13 L. Ed. 2d 759, 776, 85 S. Ct. 824, 839.) After the court's decision in *Batson*, there was some confusion as to the applicability of *Batson*. In *Allen v. Hardy* (1986), 478 U.S. 255, 258, 92 L. Ed. 2d 199, 204, 106 S. Ct. 2878, 2879-80, the Court concluded that "*Batson* should not be applied retroactively on collateral review of convictions that became final before [the Court's] opinion was announced." The court further clarified its position in *Griffith v. Kentucky* (1987), 479 U.S. 314, 328, 93 L. Ed. 2d 649, 661, 107 S. Ct. 708, 716, when it held that the rule announced in *Batson* should apply retroactively to all cases which had been pending on direct review or were not yet final at the time *Batson* was decided.

■ In order to establish a *prima facie* case of discrimination, *Batson* requires that the defendant must first show that the prosecutor exercised his peremptory challenges to exclude members of a cognizable racial group from the venire and the defendant must show

that he is a member of that group. (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723.) Once the defendant has made this showing, he may then "rely on the fact *** that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' " (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723, quoting *Avery v. Georgia* (1953), 345 U.S. 559, 562, 97 L. Ed. 1244, 1247-48, 73 S. Ct. 891, 892.) The defendant must then demonstrate that these facts and other relevant circumstances raise an inference that the prosecutor used those peremptory challenges to exclude the veniremen from the petit jury because of their race. *Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723; *Avery*, 345 U.S. at 562, 97 L. Ed. at 1248, 73 S. Ct. at 892; *People v. Mahaffey* (1989), 128 Ill. 2d 388, 412, 539 N.E.2d 1172.

■ It is well settled that in determining whether a defendant has established a *prima facie* case of purposeful discrimination in the prosecutor's exercise of peremptory challenges, the trial court must consider all relevant circumstances and not solely the number of blacks peremptorily challenged. (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723; *Mahaffey*, 128 Ill. 2d at 413; *People v. Evans* (1988), 125 Ill. 2d 50, 64, 530 N.E.2d 1360; *People v. Young* (1989), 128 Ill. 2d 1, 19, 538 N.E.2d 453.) The relevant circumstances include:

> " '[A] "pattern" of strikes against black jurors; "the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges" [citation]; the disproportionate use of peremptory challenges against blacks [citations]; the level of black representation in the venire as compared to the jury [citations]; whether the excluded blacks were a heterogeneous group sharing race as their only common characteristic [citation]; the race of the defendant and victim [citations] ***.' " (*People v. Holman* (1989), 132 Ill. 2d 128, 173, 547 N.E.2d 124, quoting *Evans*, 125 Ill. 2d at 63.)

(See also *People v. Harris* (1989), 129 Ill. 2d 123, 172-73, 544 N.E.2d 357; *People v. McDonald* (1988), 125 Ill. 2d 182, 196, 530 N.E.2d 1351.) The trial judge may also consider the conduct of the prosecutor in previous cases. *Holman*, 132 Ill. 2d at 173; *Mahaffey*, 128 Ill. 2d at 414.

■ Pursuant to the instructions set forth in *Batson*, once the defendant has established a *prima facie* case of discrimination, the State must then meet its burden of providing a neutral explanation for excluding each black venireperson. (*Batson*, 476 U.S. at 98, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723-24.) This burden cannot be met by

the State with a simple assertion that the peremptory challenges were based upon the assumption that the venirepersons would be sympathetic towards the defendant because they share the same race. (*Batson*, 476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.) Nor can the State rebut a *prima facie* case of discrimination with a mere assertion that it does not know why it exercised its peremptory challenges or that it did not have a discriminatory motive. *Harris*, 129 Ill. 2d at 181.

After the State has provided its reasons for striking the venirepersons, it is the trial judge's responsibility to determine whether the State's explanations are sufficient to rebut the defendant's *prima facie* case of purposeful discrimination. (*Harris*, 129 Ill. 2d at 174.) The trial court's finding must be given great deference by a court of review since its determination is a factual matter based largely on the question of credibility. (*Batson*, 476 U.S. at 98 n.21, 90 L. Ed. 2d at 88 n.21, 106 S. Ct. at 1724 n.21; *People v. Brisbon* (1989), 129 Ill. 2d 200, 229, 544 N.E.2d 297.) The trial judge, who is presumably familiar with local conditions and prosecutors, will draw upon his power of observation and judicial experience in distinguishing whether there exists a true case of discrimination or a false one. (*People v. Andrews* (1989), 132 Ill. 2d 451, 463, 548 N.E.2d 1025; *Evans*, 125 Ill. 2d at 67.) The trial court's finding will only be reversed if it is against the manifest weight of the evidence. *McDonald*, 125 Ill. 2d at 199; *Brisbon*, 129 Ill. 2d at 231.

In the present case, the record reveals that the defendant is a black man and the prosecutor used four peremptory challenges to remove members of the defendant's race. Three were used to exclude black veniremen and one was used to challenge a black alternate. While the State notes that one black alternate was selected to serve on the jury, it is well established that a racial group does not have to be completely excluded to prove discrimination. (See *People v. Colley* (1988), 173 Ill. App. 3d 798, 807, 523 N.E.2d 223; *People v. Johnson* (1987), 159 Ill. App. 3d 991, 513 N.E.2d 852; *People v. Seals* (1987), 153 Ill. App. 3d 417, 505 N.E.2d 1107.) Moreover, our supreme court has held that it is unconstitutional to exclude even one minority venireperson based on race and such actions would require this court to reverse the defendant's conviction. *Harris*, 129 Ill. 2d 123; *McDonald*, 125 Ill. 2d at 200.

At the conclusion of *voir dire* and in his post-trial motion the defendant moved to dismiss the jury on the grounds that the prosecutor had systematically excluded all of the black veniremen. Therefore, on appeal, the defendant contends that his cause should be remanded

to the trial court for a *Batson* hearing. The State argues that the defendant's case should not be remanded for a *Batson* hearing since a waiver of this issue occurred when the defendant did not object to the State's use of peremptory challenges until after the jury was sworn. The State is correct in its argument that challenges to the composition of a jury must be raised before the jury is sworn. (See *Evans*, 125 Ill. 2d at 61; *People v. Gaines* (1981), 88 Ill. 2d 342, 359, 430 N.E.2d 1046.) A timely objection before the jury is sworn provides the trial court with an opportunity to conduct a hearing, while all venirepersons are present and before the trial begins. (*Andrews*, 132 Ill. 2d at 457.) However, it is also true that the waiver doctrine applies to the State as well as to the defendant. *Andrews*, 132 Ill. 2d at 458; *People v. O'Neal* (1984), 104 Ill. 2d 399, 407, 472 N.E.2d 441.

█ In the instant case, the State did not argue the untimeliness of the defendant's objection to the use of peremptory challenges when the defendant raised this issue at the conclusion of *voir dire* and in his post-trial motion. We, therefore, conclude that the State has waived its argument regarding the timeliness of the defendant's objection to the State's exercise of peremptory challenges since it failed to raise this issue at trial. See *Harris*, 129 Ill. 2d at 171; *Colley*, 173 Ill. App. 3d at 806.

█ █ In light of *Batson*, we remand this case to the circuit court of Cook County to conduct a hearing in accordance with the guidelines set forth in *Batson* on the defendant's assertion that the State systematically discriminated against blacks in its exercise of peremptory challenges. Upon remand, the trial court will allow the defendant to present evidence in support of his claim of unconstitutional discrimination in the prosecutor's exercise of peremptory challenges. If the trial court determines that the defendant has established a *prima facie* case of purposeful discrimination, the trial court must then allow the State an opportunity to come forward with nonracial reasons for exercising its peremptory challenges against black venirepersons. The explanation must be clear and reasonably specific. (*Batson*, 476 U.S. at 98 & n.20, 90 L. Ed. 2d at 88-89 & n.20, 106 S. Ct. at 1723-24 & n.20.) Moreover, it will not be considered as a race-neutral explanation if the State included white veniremen having similar characteristics and the State does not provide any meaningful characteristics that distinguishes the white venirepersons that were retained from the black venirepersons who were excluded. (*People v. Mack* (1989), 128 Ill. 2d 231, 239, 538 N.E.2d 1107; *McDonald*, 125 Ill. 2d at 199.) At the conclusion of the State's explanations, the trial court must then make findings of fact and conclusions of law as to

whether the State has rebutted the defendant's *prima facie* case of discrimination (*Holman*, 132 Ill. 2d at 170; *Harris*, 129 Ill. 2d at 169), and its conclusion must be based on the reasons articulated by the State. *Harris*, 129 Ill. 2d at 184.

If the trial court determines that the State has failed to rebut the defendant's *prima facie* case of purposeful discrimination, then a new trial shall be ordered. If a new trial is not required, in light of *People v. Bryant*, discussed previously, the defendant's conviction and sentence will be reinstated.

For the reasons stated above, we remand this case to the circuit court of Cook County for a *Batson* hearing. Dependent upon the outcome of the *Batson* hearing, the defendant's conviction and sentence will be affirmed or he will be granted a new trial.

Affirmed in part and remanded with directions.

BUCKLEY, P.J., and O'CONNOR, J., concur.