THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ANTHONY W. MIMS, Defendant-Appellant.

Fifth District   No. 5—90—0315

Opinion filed February 25, 1992.

Daniel M. Kirwan and Stanley P. Stasiulis, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

William Haine, State's Attorney, of Edwardsville (Kenneth R. Boyle, Stephen E. Norris, and Rebecca Sanders, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE GOLDENHERSH delivered the opinion of the court:

After a bench trial, defendant, Anthony W. Mims, was convicted of possession of a stolen motor vehicle in violation of section 4—103(a)(1) of the Illinois Vehicle Code (the Code) (Ill. Rev. Stat. 1989, ch. 95½, par. 4—103(a)(1)). In this cause, defendant raises the following issues: (1) whether defendant's conviction for possession of a stolen motor vehicle must be reversed where no evidence was presented to prove that the vehicle was stolen by someone other than

defendant when defendant received it, and (2) whether defendant is entitled to a new sentencing hearing because he was not informed of sentencing alternatives available under the Alcoholism and Other Drug Dependency Act (the Act) (Ill. Rev. Stat. 1989, ch. 111½, par. 6351—1 *et seq.*).

Defendant was charged by information with possession of a stolen motor vehicle. The charge read:

> "*OFFENSES RELATING TO MOTOR VEHICLES* in that said defendant, a person not entitled to the possession of a 1977 Chevrolet pickup truck, VIN/CCL4475145304, possessed said vehicle knowing it to have been stolen or converted, in violation of Paragraph 4—103(a)(1), chapter 95½, Illinois Revised Statutes ***."

At defendant's bench trial the State called Winona Wildhaber, who testified that she and her husband were the owners of a 1977 Chevrolet Silverado pickup truck. On June 8, 1989, Mr. and Mrs. Wildhaber were sleeping when they were awakened by the sound of their truck starting. Mr. Wildhaber went to the window and saw their truck going down the road. Mrs. Wildhaber recalled that it was 4:49 a.m. when this occurred. Her husband then called the police and gave a description of the truck and what they had witnessed.

Kevin Woodring, a patrolman for the Troy police department, received a call to respond to a stolen truck which was headed west on Collinsville Road parallel to Route 162. Patrolman Woodring was just finishing his dinner break at the Amoco Truck Plaza at about 4:54 a.m. when he received the call. At about 4:55 a.m., as he left the parking lot of the Amoco Truck Plaza, Patrolman Woodring observed a truck that fit the description he had just received over his radio. The truck drove by Woodring, and Woodring saw the driver of the truck look in his direction. The driver accelerated and weaved around some barricades in a construction area. Woodring followed the truck and called in the license number of the truck. He had his siren and lights activated. He pursued the truck, and a high-speed chase ensued. Woodring never lost sight of the truck. The chase ended about two miles later when defendant tried to leave the interstate on which he was traveling but hit a ditch between the highway and the field. After the truck came to an abrupt stop, Woodring approached the vehicle and found defendant, who complained of a leg injury. Defendant was then transported to the hospital.

Woodring looked inside the truck and saw that the ignition switch had been removed. According to Woodring, any General Motors product can easily be stolen by breaking away a piece of the steering

column, which is just molded pot metal. Inside this area, there is a switch that can be flipped which will not only release the steering lock, but also start the engine. However, the method used to steal this truck, which included removal of the ignition switch, was more complicated and much more time-consuming.

Woodring did not give defendant either a field sobriety test or a breath test. At the scene, Woodring detected a "moderate" smell of alcohol on defendant but believed that defendant's driving had not been impaired by alcohol and that defendant was not driving under the influence. The State rested.

Defense counsel called defendant's brother, Brian Mims. Brian testified that his and defendant's mother had recently died and that defendant began to have substance abuse problems after her death. Brian believed defendant was abusing Valium and alcohol and that defendant needed help. Brian saw defendant on the evening of June 7, 1989, between 9 and 10 p.m. Brian said defendant was "acting crazy and drugged up." In the hour that Brian was with defendant, Brian had to force defendant to sit down 10 times because defendant was trying to leave. Defendant could not remember what had been said only five minutes before. Brian opined that defendant's ability to reason was impaired by Valium and alcohol on the evening of June 7, 1989, although he did not see defendant drink or take any drugs that evening. When Brian left defendant's house at 10 p.m., defendant was with his wife and appeared to be going to bed. Defendant's 16-year-old nephew, Damon, corroborated Brian's testimony concerning defendant's condition on the night of June 7, 1989.

Defendant testified on his own behalf. He admitted to abusing alcohol and drugs. Defendant stated that his problems started when he began using Valium after he found his mother dead in her house. He stated that he had attempted to get help for his problem but could not afford treatment. Defendant testified that on June 7, 1989, he obtained a "script" of 10 milligram Valiums and started taking them at about 10:30 or 11 a.m. He had no recollection of the events on the evening of June 7, 1989. Defendant recalled waking up in the hospital and being told that he was in trouble. Defendant asked why he was in trouble and remembers something about a truck being mentioned. Defendant could not confirm or deny if he stole the truck or if he was even driving the truck. Ultimately, the trial court found defendant guilty and sentenced him to five years in the Department of Corrections.

■ The first issue we are asked to address is whether defendant's conviction for possession of a stolen motor vehicle must be re-

versed because no evidence was presented to prove that the vehicle was stolen by someone other than defendant prior to defendant's receipt of it. Defendant argues that in order to be convicted of possession of stolen property, the State must first show that the property was stolen by a person other than the one who has been charged with possessing it. The State replies that all the elements of section 4—103(a)(1) of the Code (Ill. Rev. Stat. 1989, ch. 95½, par. 4—103(a)(1)) under which defendant was charged have been met. Having proved the requisite elements under section 4—103(a)(1), the State contends that it was unnecessary to prove that someone other than defendant stole the truck prior to defendant receiving it.

Defendant is correct that in the past the rule had been that in order to sustain a conviction for possession of stolen property, the State had to show that the property was stolen by a person other than the one charged with possessing it. (*People v. Rubin* (1935), 361 Ill. 311, 327-28, 197 N.E. 862, 870; *People v. Prall* (1924), 314 Ill. 518, 525, 145 N.E. 610, 613; *People v. Ensor* (1923), 310 Ill. 483, 484, 142 N.E. 175.) However, in the present case we are dealing with a specific statute, namely section 4—103(a)(1) of the Code, which concerns possession of a stolen motor vehicle. The statute reads, in pertinent part:

"Offenses relating to motor vehicles and other vehicles—Felonies. (a) It is a violation of this Chapter for:

(1) A person not entitled to the possession of a vehicle or essential part of a vehicle to receive, possess, conceal, sell, dispose, or transfer it, knowing it to have been stolen or converted ***." Ill. Rev. Stat. 1989, ch. 95½, par. 4—103(a)(1).

The primary rule of statutory construction is to ascertain and to give effect to the true intent and meaning of the General Assembly. (*People v. Boykin* (1983), 94 Ill. 2d 138, 141, 445 N.E.2d 1174, 1175.) If the language of a statute is clear on its face, its meaning should be given effect without resort to supplementary principles of statutory construction. (*People v. Singleton* (1984), 103 Ill. 2d 339, 341, 469 N.E.2d 200, 202.) It is presumed that the General Assembly intended words to have their ordinary meaning unless a statutory definition indicates a contrary intention. (*People v. LaPorte* (1960), 28 Ill. App. 2d 139, 143, 171 N.E.2d 95, 97.) As used in its ordinary sense, the word "or" marks an alternative indicating that the various phrases of the sentence which it connects are to be taken separately. *People v. Spencer* (1971), 131 Ill. App. 2d 551, 553, 268 N.E.2d 192, 193; *People v. Vraniak* (1955), 5 Ill. 2d 384, 389, 125 N.E.2d 513, 517.

Applying these rules of statutory construction to the statute in question, it is clear the General Assembly intended violations if it was

determined that defendant either "received" or "possessed" a stolen motor vehicle or part. The question here is whether defendant can be convicted of possession of a stolen vehicle if he did not receive it from anyone but was in fact himself the thief.

The constitutionality of section 4—103 of the Code has been considered by our supreme court in *People v. Bryant* (1989), 128 Ill. 2d 448, 539 N.E.2d 1221. Using many of the above rules of construction, our supreme court concluded that section 4—103 was constitutional and clear on its face and that the appellate court had erred in looking at legislative debates to determine the intent of section 4—103 of the Code. (128 Ill. 2d at 455, 539 N.E.2d at 1224; for appellate decision see *People v. Bryant* (1988), 165 Ill. App. 3d 996, 520 N.E.2d 890.) Our supreme court stated:

> "As previously mentioned, section 4—103 applies to *all persons* including organized motor vehicle thieves. Therefore, the appellate court erred in determining that possessors of stolen motor vehicles are punished more severely than organized motor vehicle thieves, because *all persons* who possess a stolen motor vehicle, including organized motor vehicle thieves, are punishable under section 4—103(b) of the Vehicle Code." (Emphasis in original.) (128 Ill. 2d at 456, 539 N.E.2d at 1225.)

The *Bryant* court went on to address the appellate court's determination that possession of a stolen motor vehicle is a lesser-included offense of theft and, thus, under section 4—103 the lesser-included offense is punished more severely than the greater offense of theft in violation of the due process and proportionate-penalty clauses of the Illinois Constitution (Ill. Const. 1970, art. I, §§2, 11). The *Bryant* court considered the history of the possession-of-a-stolen-motor-vehicle-penalty provision and found:

> "Under previous statutory schemes, possession of a stolen motor vehicle may have been considered a lesser included offense of theft. (See *People v. Cramer* (1980), 81 Ill. App. 3d 525, [401 N.E.2d 644,] *rev'd on other grounds* (1981), 85 Ill. 2d 92[, 421 N.E.2d 189]; *People v. Lindsey* (1979), 69 Ill. App. 3d 493[, 387 N.E.2d 828].) However, any previous lesser included offense rule is not applicable to the current statutory scheme for possession of a stolen motor vehicle. The steady increase in the penalty provision for possession of a stolen motor vehicle is indicative of the legislature's intent to make possession of a stolen motor vehicle a separate, more serious offense than theft, rather than a lesser included offense of theft. See *People v. Ambrose* (1988), 171 Ill. App. 3d 87[, 525 N.E.2d 536]; *People*

*v. Carlyle* (1987), 159 Ill. App. 3d 964[, 513 N.E.2d 61]; *People v. Smith* (1987), 159 Ill. App. 3d 156[, 512 N.E.2d 71]; *People v. Larson* (1987), 158 Ill. App. 3d 135[, 511 N.E.2d 191].

We believe that the legislature's decision to steadily increase the penalty for possession of a stolen motor vehicle was designed to distinguish possession of a stolen motor vehicle from theft in order to remedy the increasing frequency of the offense of possession of a stolen motor vehicle and its related activities. Therefore, we hold that section 4—103(b) of the Vehicle Code is reasonably designed to protect the public from the evils of the offense of possession of a stolen motor vehicle and its related activities. As such, section 4—103(b) of the Vehicle Code does not violate sections 2 and 11 of article I of the Illinois Constitution." *Bryant*, 128 Ill. 2d at 457-58, 539 N.E.2d at 1225-26.

The facts in *Bryant* are similar to the facts herein. In *Bryant*, the defendant and a companion, Williams, were seen by two police officers pushing a motorcycle into a closed service station at 3:30 a.m. The officers approached the defendant and his companion. Both the defendant and his companion related a number of false stories about who owned the motorcycle and how they came into possession of it. The police officers learned the name of the true owner of the motorcycle through a computer check of the motorcycle's license number and vehicle identification number. After contacting the true owner of the motorcycle and a party who was in the process of purchasing the motorcycle from the owner, the officers determined that the motorcycle had been stolen and placed both the defendant and his companion under arrest. Shortly after being advised of his rights, the defendant stated, "We saw it sitting there, so we took it." (128 Ill. 2d at 453, 539 N.E.2d at 1223.) Contrary to defendant's assertions in the instant case, we believe the facts in *Bryant* clearly disclose that the defendant was both the thief and the possessor of the stolen motorcycle. Moreover, the *Bryant* court stated:

"[T]he appellate court erred in determining that possessors of stolen motor vehicles are punished more severely than organized motor vehicle thieves, because *all persons* who possess a stolen motor vehicle, including organized motor vehicle thieves, are punishable under section 4—103(b) of the Vehicle Code." (Emphasis in original.) (128 Ill. 2d at 456, 539 N.E.2d at 1225.)

Therefore, the *Bryant* court recognized that a person may commit the offense of possessing a stolen motor vehicle even though that defendant stole the motor vehicle himself.

Similarly, in *People v. Rivera* (1990), 141 Ill. 2d 528, 566 N.E.2d 220, the defendant was found guilty of "possession" of a stolen motor vehicle even though he was also the thief who had stolen the car. In *Rivera*, a police officer saw a blue Oldsmobile being driven through a car lot late at night without lights. As the officer watched, the driver of the car, the defendant, drove the car into a cable that extended between two poles at the entrance of the lot. (141 Ill. 2d at 529, 566 N.E.2d at 220.) The owner of the car lot was notified and stated that he had not given the defendant permission to drive or to move the car. The *Rivera* court found that the defendant had met the elements of both theft (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(a)) and possession of a stolen motor vehicle (Ill. Rev. Stat. 1983, ch. 95½, par. 4—103(a)(1)) even though the defendant did not drive the car off the lot. In finding that the defendant had violated the theft statute (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(a)), the *Rivera* court stated:

> "The defendant took complete though unauthorized control of the car by getting in it, starting it, and driving it through the car lot without the owner's permission. *** It cannot be said that the owner retained control of the car." (*Rivera*, 141 Ill. 2d at 533, 566 N.E.2d at 222.)

In finding that the defendant had violated section 4—103(a)(1) of the Code (Ill. Rev. Stat. 1983, ch. 95½, par. 4—103(a)(1)), the *Rivera* court stated:

> "To be convicted of possession of a stolen motor vehicle, the State must establish that the defendant, without permission, possessed the owner's car knowing it to have been stolen. (Ill. Rev. Stat. 1983, ch. 95½, par. 4—103(a)(1).) Here, the defendant got into the car, started it, and drove it around the car lot without permission from Burba. The testimony of the owner, Burba, that he did not give permission to the defendant to use the auto was uncontradicted." (*Rivera*, 141 Ill. 2d at 533-34, 566 N.E.2d at 222.)

Both *Bryant* and *Rivera* recognize that a person may commit the offense of possessing a stolen motor vehicle by stealing that vehicle himself.

We are required to follow the plain meaning of section 4—103(a)(1), which, as discussed earlier, allows for a conviction if a defendant is found to have "possessed" a stolen motor vehicle. We also follow the precedents of our supreme court as set forth in both *Bryant* and *Rivera*. In both these cases, our supreme court allowed the convictions of the defendants to stand even though the defendants were not only the possessors of the stolen vehicles but also the origi-

nal thieves. For these reasons, we find that defendant's conviction for possession of a stolen motor vehicle should be affirmed.

■■ The other issue we are asked to consider is whether defendant is entitled to a new sentencing hearing. Defendant contends that this cause should be remanded for a new sentencing hearing because the trial court did not consider treatment alternatives for defendant and did not advise defendant of the possibility of his being placed on probation if defendant elected to submit to treatment for his alleged addiction. (Ill. Rev. Stat. 1989, ch. 111½, par. 6360—1.) The State replies that the evidence presented at trial, in the presentence investigation report and at the sentencing hearing was conflicting as to whether defendant was an addict and did not give the trial judge reason to believe that defendant was an addict; therefore, the trial judge had no duty to advise defendant of possible treatment alternatives. We agree with the State.

The purpose of the Act is to prevent drug abuse and to encourage treatment and rehabilitation of drug addicts. (Ill. Rev. Stat. 1989, ch. 111½, par. 6351—1 et seq.). However, a defendant does not have an absolute right to be sentenced under the Act. Factors to be considered are a defendant's past record of drug abuse and the likelihood of rehabilitation through treatment. (People v. Williams (1985), 138 Ill. App. 3d 592, 594, 486 N.E.2d 333, 335.) The trial court's determination of a defendant's eligibility for treatment and sentencing under the Act will not be reversed absent a showing that the trial court abused its discretion. People v. Hirschmann (1988), 175 Ill. App. 3d 150, 153, 529 N.E.2d 760, 762.

In the instant case, the evidence was conflicting as to whether defendant had an alcohol and/or drug abuse problem. As the State pointed out in its brief, defendant's statements at trial that he has substance abuse problems were self-serving in that defendant's testimony in this regard was intended to show that defendant could not have formed the requisite intent to commit the crime. Defendant's brother and nephew also testified that defendant suffered from some type of drug and/or drug impairment on the date in question. There was also testimony at trial by defendant that he had sought treatment for his addiction to Valium, but that he could not afford such treatment.

On the other hand, there was contrary testimony from the arresting officer, who testified that he did not believe defendant to be under the influence on the date in question. Moreover, in the presentence investigation report, defendant's wife is reported as saying that she never thought defendant had a drug problem. At the sentencing hear-

ing, defendant testified that he had not used drugs or alcohol during the year between the time when he had committed the offense and the sentencing hearing. Other witnesses corroborated defendant's testimony in this regard. Considering such conflicting testimony, and considering that by all accounts defendant had not used either drugs or alcohol in the year preceding defendant's sentencing hearing, we cannot say that the trial court erred in failing to advise defendant of the sentencing alternative available under the Act.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

HARRISON and CHAPMAN, JJ., concur.